## W. H. NANCE *v.* J. C. SMYTH.*

### (*Nashville.* December Term, 1906.)

1. **ASSIGNMENTS OF ERROR.** For improper admission of evidence too general to be considered, when.

    Assignment of error for improper admission of evidence must in the specifications quote the full substance of the evidence admitted, with citation of record, where the evidence and ruling may be found, or the assignment will not be considered. (*Post, p.* 351.)

2. **WRITTEN FINDING OF FACTS AND LAW.** No error for meagerness or omissions without request for additional findings, when.

    Where the trial judge makes a finding of facts and law in writing under a request therefor, there can be no complaint on appeal that there were items of evidence not included in the findings and which should have been included, where there was no request for additional findings in the court below. `(*Post, pp.* 351, 352.)

    Case cited and approved: Hinton v. Insurance Co., 110 Tenn., 113.

3. **REAL ESTATE AGENTS.** Not producing purchaser, nor making the sale, is not entitled to commissions, when.

    A real estate broker having the agency, but not the exclusive agency, to sell land, for the owner is not entitled to commissions as compensation, where he was not the producing cause of the sale and did not produce the purchaser or bring the purchaser and vendor together, nor inform the owner of the name of the prospective purchaser, who learned that the land was for sale, and the name of the owner thereof, independent of the agent, and

---

*As to when real estate broker is considered as the procuring cause of the sale or exchange of property, see note to Hoadley v. Savings Bank (Conn.), 44 L. R. A., 321.

at the same time that the agent learned these facts, and subsequently purchased directly from the owner after an unsuccessful attempt to make a trade through the agent. (*Post, pp.* 352-357.)

Cases cited and approved: Arrington v. Cary, 5 Bax., 609; Royster v. Mageveney, 9 Lea, 148; (head note criticized as too meager and inaccurate); Cheatham v. Yarbrough, 90 Tenn., 77; Glascock v. Vanfleet, 100 Tenn., 605; Boswell v. Carpenter, Jackson, MS., April Term, 1906.

4. SUPREME COURT PRACTICE. Erroneous judgment upon written finding of facts and law made under request corrected, and proper judgment rendered.

Where the judgment of the court below based upon the trial judge's finding of facts and law under a request therefor is reversed, because not warranted by the findings of fact that were supported by any evidence, the supreme court will render such judgment as should have been rendered below, and dismiss plaintiff's suit. (*Post, p.* 357.)

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.—JOHN W. CHILDRESS, Judge.

LeROY McGREGOR, for Nance.

W. H. COOPER, for Smyth.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought by the defendant in error to recover commissions on a sale of real estate made by

the plaintiff in error to one Jacobs.   Defendant in error
is a real estate agent, and he claims that he was em-
ployed by the plaintiff in error to sell a certain farm
for him; that, after he had produced a purchaser, the
plaintiff in error took the matter out of his hands and
completed the sale, at the price of $3,000.   The court
below rendered judgment in favor of the defendant in
error, from which the plaintiff in error has appealed to
this court, and has assigned errors.

His honor, Judge Childress, before whom the case was
tried in the circuit court of Davidson county, was re-
quested to make a finding of fact and law in writing,
which he did.   Before stating the contents of this writ-
ing, it is proper to notice certain objections raised by
counsel for plaintiff in error.

It is said that his honor improperly admitted various
items of testimony.   These matters, however, are not
presented to this court in such a way that they can be
considered.   In subsection 3 of bar rule No. 20 (5
Pick., 775), it is provided: "When the error alleged
is to the admission or rejection of evidence, the specifica-
tions shall quote the full substance of the evidence ad-
mitted or rejected, with citation of record, where the
evidence and ruling may be found."   This provision not
having been complied with, we cannot consider the as-
signment.

It is next insisted that there are several items of evi-
dence not included in the findings of the court which
should have been included.   There was no request for

additional findings in the court below, and this matter cannot therefore be considered. The practice upon this subject is fully laid down in *Hinton* v. *Insurance Co.,* 110 Tenn., 113, 72 S. W., 118.

It is next insisted that his honor included in his findings several points for which there can be found no evidence in the record; these objectionable points in his honor's findings being pointed out in the brief of plaintiff in error's counsel.

After carefully comparing the findings referred to with the bill of exceptions, we feel bound to say that these objections are in several instances well taken; but it should also be stated that they do not effect any very material change in his honor's report on the facts.

We do not particularize these points, but shall now reproduce the substance of the findings of the court below, leaving out those matters which we do not find supported by the bill of exceptions; that is to say, matters concerning which we find no support whatever in the bill of exceptions.

The findings are as follows:

Smyth is a real estate agent, who has complied fully with the laws of the State required for such business. He had a contract with Otto Jacobs for the purchase of a place near Nashville, on the White's creek pike, some distance beyond the land in controversy in the present case; and in company with Otto Jacobs and William Jacobs, a brother of the latter, Mr. Smyth was

on his way to look at the place just referred to; and in passing the Nance place, William Jacobs remarked that that place was for sale at $2,000. On their return from looking at the place, which lay beyond the Nance place, the parties stopped at the latter, and by permission of the tenant then in possession looked through the house and over the grounds; the tenant, Mrs. Edge, stating that the place was for sale at $2,000.

The next morning Mr. Smyth called on Mr. Nance for the purpose of ascertaining whether his place was for sale at $2,000. On this inquiry being made of him, Nance replied that the place was for sale, not at $2,000, but at $3,000, one-fourth cash, the balance upon stipulated payments, and told Smyth that agent's commissions would be paid. Smyth informed Nance that he was a real estate agent.

Smyth, regarding what has just been stated as a listing of property with him, advertised his sale in the American. Jacobs saw this advertisement shortly thereafter, and called Smyth over the telephone and requested him to come to his (Jacobs') place of business. Smyth went at once, and they discussed the place, its price, and the terms of sale. Jacobs said to Smyth, in substance, that he wanted the place, and told Smyth to go to Nance and see if any less sum would buy it on a cash basis. Smyth went at once and made the inquiry, but Nance refused to sell for any less than $3,000. This

118 Tenn—23

fact was reported to Jacobs. Smyth never at any time informed Nance who the prospective purchaser was.

Prior to the foregoing occurrence, Mrs. Edge, who lived on the place in question as Nance's tenant, had called William Jacobs' attention to the fact that the land was for sale, and the latter had called his brother Otto's attention to the fact, but not until the day that they were returning from the inspection of the other piece of land above mentioned.

A day or so subsequent to the interview between Jacobs and Smyth, and between Smyth and Nance above referred to, Jacobs met Nance, and they closed a trade for the place upon the terms originally proposed by Nance. Smyth, a few hours after, and before the deeds were made, or any consideration passed, was informed of the sale, and notified Nance that he claimed his commission upon the sale for furnishing the customer. Nance denied his claim to a commission, but offered, to avoid trouble, to pay him ten dollars. This was declined. The deed was not passed from Nance to Jacobs for several days after this, when the matter was closed, with full knowledge upon the part of Nance that Smyth claimed his commissions. It further appears that Nance had previously listed the same property with Maddux & Callender as real estate agents, at the same price and at the same terms, and, being a friend of Maddux, when the deal was closed, Maddux, as a favor to Nance, and without compensa-

tion of any sort, prepared the deeds and papers closing the transaction.

On these facts, his honor concluded as a matter of law that the plaintiff below was entitled to his commissions, and therefore rendered judgment for $120.

From the judgment so rendered the defendant appealed, and has here assigned errors. Some of these errors have already been noticed. The chief one is that which challenges the soundness of the legal conclusion applied by his honor to the foregoing facts.

We are constrained to differ from the conclusion reached in the court below. It is observed that there is no finding that Mr. Smyth was given exclusive agency for the sale of the property, or that Mr. Nance debarred himself from making the sale. It is also to be observed that there is no finding that the purchaser was produced by Mr. Smyth. There is a distinct finding of quite a contrary nature, which is that Mr. Smyth never did communicate to Mr. Nance the name of the purchaser. It is further proven, as shown in the finding, that the purchaser, Otto Jacobs, did not learn from Mr. Smyth that Mr. Nance had the land for sale. This fact he learned from his brother, William Jacobs. Nor does it appear that Mr. Nance in any way acquired this knowledge through the agency of Smyth, or as a consequence of anything that Smyth had done or said. Indeed, it is difficult to conclude from the facts stated that Mr. Smyth performed any service at all for Mr. Nance, except advertising the property in the American; and it

does not appear that this advertisement, as matters turned .out, was of any real service to Mr. Nance.

The law of the case we find fully stated in the case of *W. P. Boswell* v. *M. E. Carpenter,* Jackson, MS., April term, 1906. In that opinion it is said:

"It is true that, when a real estate agent brings the vendor and the proposed purchaser together, the vendor cannot take up the transaction and complete it, if the purchase is one that will deprive the agent of his commissions. *Arrington* v. *Cary,* 5 Baxt. (Tenn.), 609; *Royster* v. *Mageveney,* 9 Lea (Tenn.), 148; *Glascock* v. *Vanfleet,* 100 Tenn., 605, 46 S. W., 449.. But it is essential to such liability that the parties shall be brought together by the agent; that is to say, the agent must produce the purchaser. That element is lacking in the present case.   . . .   The owner had not debarred himself from making the contract. He had not given an exclusive agency to Mr. Carpenter. So we have the case of an owner, who had reserved to himself the right of sale, subsequently making a sale to a purchaser who came to him directly," etc.

When the agent took the contract without an exclusive agency, he took the risk of the owner selling to other persons. The fact that some other persons negotiated with the agent for awhile without the knowledge of the principal would not give the agent a right to commissions from a subsequent sale made by the owner, or principal. We need not discuss the law of the case, or do more than refer to the cases cited above

from 9 Lea and 16 Pick., adding, however, a cautionary remark to the effect that the syllabus of the 9 Lea case does not state the case accurately, and, further, that to understand the sense in which the court approved the excerpt from the charge copied the comments thereon immediately following must be read.   In addition to the foregoing, see, also, *Cheatham* v. *Yarbrough,* 90 Tenn., 77, 15 S. W., 1076.   The substance of the matter is that, to entitle the agent to commissions, he must have been "the producing cause" of the sale; that is, it must have been the direct result of his exertions to bring it about, and the burden of proof is on him to show that he was the producing cause.   23 Am. and Eng. Enc. of Law, pp. 909, 910, 911.

It is manifest, from the facts recited above, that Mr. Smyth was not the producing cause of the sale which took place between Mr. Nance and Mr. Jacobs.

It results that the judgment of the court below must be reversed; and, rendering such judgment here as should have been rendered below, we direct a dismissal of the defendant in error's action and tax him with the costs of this court and the court below.