SOUTHERN RAILWAY COMPANY *v.* BICKLEY, MCCLURE & COMPANY.

(*Knoxville.*   September Term, 1907.)

1.  **COMMON CARRIERS.** Delivery of trunk is essential to create liability for its loss.

    Delivery of a trunk, actual or constructive, to a common carrier is essential to render it liable as such for its loss.   (*Post, pp.* 530, 532.)

2.  **SAME.** Same.   Delivery of trunk check issued by one railroad to the agent of another railroad is not a constructive delivery of the trunk to the latter railroad, when.

    There is no constructive delivery of a trunk to a railroad so as to render it liable for the loss thereof, where its station agent accepted a check issued by another railroad for its transportation to a station common to both railroads, at which they had a common agent and common depot, and agreed to have the trunk brought over the line of his railroad, and to forward it to the destination of the person delivering the check, but failed to do so, and the trunk was subsequently burned while at the said common station to which it was checked by the accepted check.

    Case cited and approved:   Stewart v. Gracey, 93 Tenn., 314.

    Case cited and distinguished:   Railroad v. Weaver, 9 Lea, 38.

3.  **APPEALS.** Dismissal of suit upon reversal of judgment for plaintiff without a jury, when.

    Upon reversal of a judgment rendered in favor of the plaintiff by the lower court, without the intervention of a jury, the supreme court will dismiss the suit. (*Post, p.* 536.)

Railroad v. Bickley.

## FROM KNOX.

Appeal in error from the Circuit Court of Knox County.—JOHN W. GREEN, Special Judge.

LINDSAY, YOUNG & SMITH and JOUROLMON, WELCKER & SMITH, for Railroad.

SHIELDS, CATES & MOUNTCASTLE, for Bickley, McClure & Co.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is an action to recover from the Southern Railway Company the value of the contents of a trunk which the defendants in error claim was lost by fire while in the possession of that company as a common carrier.

The record shows that one Armstrong was an employee of the defendants in error, traveling in their interest and carrying with him a number of trunks containing samples of merchandise for the purpose of exhibition to the trade. In his testimony Armstrong states that at Pennington Gap, in Virginia, on the line of the Louisville & Nashville Railroad, he checked the trunk in question to Cumberland Gap, a station of the road in this

119 Tenn.—34

State; that he did not accompany the trunk, but drove through the country to Tazewell, a town on the line of the Southern Railway Company, about twelve or fourteen miles south of Cumberland Gap; that on his arrival at Tazewell he found the agent of the Southern Railway Company at his place of business, and asked him if he could not have this trunk brought over on the morning train of that company, and upon his saying he could he (Armstrong) delivered the check issued to him at Pennington Gap to this agent; that the next morning he returned to the station, when the agent volunteered the statement that the trunk would be on the train then due, and that, relying on this being done, he (Armstrong) left Tazewell over the line of this railway for Knoxville, the agent agreeing that the trunk should be shipped to this latter point; that subsequently he was informed that some two weeks thereafter the depot at Cumberland Gap was destroyed by fire, and the trunk, with its contents, being still there, was burned.

He further states that the Louisville & Nashville and the Southern Railway had a common agent at Cumberland Gap, and used at that point for the transaction of their business the same station or depot. Upon these facts the question of law is: Was there a delivery of this trunk to the plaintiff in error, so as to make it liable for this loss as a common carrier?

That delivery is essential to create the liability of a party or corporation sought to be held as common carrier is beyond question. It is well settled, however, that

this delivery can be as well constructive as actual, and many illustrations of a complete constructive delivery are found in the text-books and in the reports of many States. In the present case there was no actual delivery. Now, was there a constructive delivery, such as to make the Southern Railway liable for this loss? Even if it be true that this trunk was, at the time of the agreement made by the agent at Tazewell to forward it to Knoxville, in the depot at Cumberland Gap (and there is no evidence in the record of that fact), yet we do not see how the mere delivery of that check and its acceptance by the agent of the Southern Railway can be held as a constructive delivery to the latter road. Though it be, as was held by this court in *L., etc., R. Co.* v. *Weaver,* 9 Lea, 38, 42 Am. Rep., 654, that a check for baggage is, in legal effect, and answers the purpose of, a bill of lading, yet this check was issued by the Louisville & Nashville Railroad upon an undertaking to convey the trunk to Cumberland Gap. Wherever the trunk was at the time of the agreement in question, it was in the possession and under the control of that company. It may be that, upon the presentation of that check by the Southern Railway to the agent of the Louisville & Nashville Railway Company, it would have surrendered its possession. But it was not surrendered, nor does it appear affirmatively from this record that it would have been. Certainly the mere agreement between Armstrong and the agent of the Southern Railway, without the consent of the Louisville & Nashville

Railway Company, could not work a transmutation of possession. This was essential to the maintenance of the present action; for the authorities all agree that, until the entire and exclusive custody of goods or baggage has been given to the common carrier, no responsibility rests upon him in that character. Hutchinson on Carriers, section 94; 4 Elliott on Railroads, section 1403 et seq.

We do not deem it of any importance in the settlement of this question that these two railways used the same station at Cumberland Gap and had there an agent in common. The duties of this party to his several employers were as distinct as if devolved upon two separate persons, who discharged them at two different stations or depots in that town.

If it appeared that the Southern Railway had, by an established custom or otherwise, authorized such an agreement as was made in this case, then no doubt the carrier relation would have at once attached; but there is nothing to show that such authority was given to its agent, either expressly of by implication. If bound to make good the loss of this trunk under the conditions disclosed, then this railway would have been equally bound upon such an agreement made by this agent if the check had made it deliverable to Louisville or some other point on the Louisville & Nashville Railway, hundreds of miles distant from Tazewell. Mere distance could not affect in any degree this question of liability. It could hardly be maintained that one who checked his

Railroad v. Bickley.

trunk from the city of New York to Washington over one of the lines of the Pennsylvania System, and, without more, being at Bristol, Tennessee, delivered his check to the agent of the Southern Railway at that place, upon the agreement of the latter to see that the trunk was forwarded to Knoxville, Tennessee, where the owner was then bound, could hold that railway liable for its loss, where the failure occurred under the circumstances such as is shown in the present case.

It seems to us that, should the plaintiff in error be held liable in this case, then if, instead of delivering the check to its agent in Tazewell, it had been given by Armstrong to the agent of the transfer company in Knoxville, who accepted it with a promise to see that the trunk was forwarded, and, failing to do so, it was lost or destroyed, that company would be equally liable. Yet no one would insist that, without any authority shown upon the part of the transfer agent to make such agreement, or any proof of the fact that the trunk had ever come into the actual possession of the transfer company, it would be responsible for the loss. We are unable to understand how the mere fact that the line of the Southern Railway extended from Tazewell to Cumberland Gap can in any wise affect the question.

We think the case falls within the authority of *Stewart* v. *Gracey*, 93 Tenn., 314, 27 S. W., 664. There, through its agent, the firm of Stewart, Ralph & Co. had purchased from a firm in the city of Clarksville a num-

ber of hogsheads of tobacco.   The defendants, Gracey
& Bro., were common carriers in that city engaged in the
transfer business.    The agent of Stewart, Ralph & Co.
delivered to Gracey & Bro. the warehouse receipts or
coupons for this tobacco, and at the same time gave them
a written order on the  warehouseman   for the same.
There were unavoidable delays experienced by Gracey &
Bro. in the removal of the tobacco, during which time
several of the hogsheads were destroyed by fire, and the
object of the suit was to hold them liable for the loss
thereby sustained, upon two grounds:  First, of negli-
gence; and, second, that as common carriers they were
insurers against all losses except those occasioned by the
act of God or the public enemy.   In the course of the
opinion, in disposing of the second ground, the court
said:   "It is insisted the order and coupons had been
accepted by the carrier, and that by virtue of holding
them they had commenced to move and had in fact moved
a portion of the fifty-six hogsheads.   .  .   .   The
argument is that these acts constituted a constructive
delivery, and the tobacco thereby passed under the con-
trol and custody of the carrier for removal, and that
the carrier's liability at once attached.   We are unable
to concur in this contention.   The contract of carriage
involves a bailment, and ordinarily there must be an
actual delivery of the goods to the carrier.   A contract
with a common carrier for the transportation of prop-
erty being one of bailment, it is necessary, in order to

charge him for its loss, that it be delivered to and accepted by him for that purpose. But such acceptance may be actual or constructive. For instance, if the property be deposited at a designated station, in accordance with a conventional arrangement between the parties in respect to the mode of delivery, or if it be deposited with a third person who is authorized by the carrier to execute a bill of lading in the name of the carrier, then such mode of delivery is as complete as if the property had been actually deposited with the carrier. . . . But in the case at bar the tobacco was not deposited in the custody of an agent of the shipper and constructively in the possession of the shipper himself. The carrier did not execute a bill of lading or receipt for the property, nor did he in any way acknowledge that the property was in his custody. The carrier in this place simply had an order from the shipper to enable him to get possession of the tobacco. If the warehouseman had refused to recognize the order, and had converted the property to his own use, the carrier would not be liable simply for the reason that he had never secured possession of the goods."

If it be true that with the warehouse receipts or coupons in their hands, and an order from the owner for a delivery of the tobacco, there was no constructive delivery, so as to impose on Gracey & Bro. the liability of a common carrier, then we think the principle announced applies in this case, where an agent without any real or apparent authority, so far as we can see, from

his principal, accepts a check issued by another railroad for a trunk then at a point twelve or fourteen miles distant and in the custody of the railroad, and agrees to forward the trunk to his place of destination. That this agent may be responsible for his failure to do what he thus undertook is possibly true; but this is beside the question in controversy.

The judgment of the court below is reversed; and, this having been delivered without the intervention of a jury, the suit is dismissed.