FLORIDA DRY CLEANING & LAUNDRY BOARD v. ECONOMY
. CASH & CARRY CLEANERS, INC., *et al.*

197 So. 550
En Banc
Opinion Filed August 2, 1940

860

*Rogers, Towers & Bailey, C. C. Bailey, L. C. Case* and *Carl T. Hoffman,* for Petitioner;

*George M. Powell* and *Vincent C. Giblin,* for Respondent.

BUFORD, J.—On petition for certiorari we review an interlocutory order granting temporary injunction.

The respondents here filed their bill of complaint in the Circuit Court of Duval County seeking an injunction against the Florida Dry Cleaning and Laundry Board. The case came on for hearing on application for temporary injunction.

The bill of complaint is a voluminous document, we think of much greater prolixity than was necessary. Answer was filed to each paragraph of the bill.

The order complained of is as follows:

"This cause coming on this day to be heard upon the bill of complaint and the answer of the defendant and the record of said cause and upon the application of the plaintiffs for the issuance of a temporary injunction herein as prayed in the bill of complaint, and said matter having been argued and submitted to the court by counsel for plaintiffs and defendant and having been considered by the court and it appearing from the record that the board did not sit for the purpose of taking testimony upon which to base its price-fixing order;

"Thereupon, upon consideration thereof, it is ordered, adjudged and decreed, for the reason set forth above, that upon the filing by said plaintiffs of a good and sufficient bond with two sureties, or a surety company authorized to do business in the State of Florida, as surety, to be approved by the clerk of this court in the penal sum of Fifteen Hundred ($1,500.00) Dollars, payable to the said defendant, Florida Dry Cleaning and Laundry Board, and conditioned according to law, that an injunction order be issued herein as prayed in the bill of complaint."

Petitioner contends that the only question which we should consider is: "Does the failure of the entire membership of the Florida Dry Cleaning and Laundry Board to sit as a body to hear testimony and to receive evidence at a duly convened public hearing render an order of the Board based upon such testimony and evidence utterly void and unenforceable?"

The respondent contends that if there was any ground stated in the bill of complaint which warranted the granting of the restraining order, such should be affirmed.

The bill of complaint shows that the petitioners in the court below are engaged in the laundry and dry cleaning business in Dade County, Florida, with the exception of

Vincent C. Giblin, who is made a party suing on behalf of himself and others like situate as customers and patrons of the laundries.

It was alleged in effect that on March 9, 1940, the Florida Dry Cleaning and Laundry Board, which will be herein-after referred to as the Board, made, entered and promul-gated its order which was made a part of the bill of com-plaint, which order was signed by all members of the Board and became effective March 22, 1940, which action was taken under purported authority of Chapter 17894, Acts of 1937, and in effect alleged: that Section 4 of Chapter 17894 authorizes the Board to supervise and regulate the entire cleaning and pressing and laundry industry of the State, to establish trade areas and provide rules, regulations and charges therein, to fix maximum and minimum prices, or either, for rendering services in such trade areas.

That the Board in the exercise of the claimed right has promulgated orders affecting the rights of the relators, and other persons similarly situated, and that such orders will directly and materially adversely affect the relators if enforced.

That Section 6 of Chapter 17894 provides that before fixing prices as contemplated by the Act the Board shall hold a public hearing for such purpose in the area to be affected and that in Section 5 of the Act it is provided that in holding of public hearings the Board shall give reasonable notice published at least ten days in advance advising the time, place and purpose of such hearing and that such hearings shall provide a fair hearing to all those reasonably interested, including the general public, and that any public hearing of the Board may be conducted "by any member of the Board, the Chief Supervisor, or any attorney or em-ployee lawfully designated for such purpose by order of the Board."

That in Section 3 of the Act provision is made for the employment of a Chief Supervisor who shall be the administrative executive of the Board in carrying out the terms of the Act, subject to the general supervision of the Board and to serve at the pleasure of the Board, with such salary, duties and powers as such Board may delegate and that: " * * * Such chief supervisor subject to the limitations of this Chapter and the law shall assist in enforcing this Chapter, but no official order may be made and issued without the approval of the majority of the membership of such board, which shall constitute a quorum for the conduct of the board's business; Provided, that between meetings of the Board such chief supervisor may be designated to perform such duties as the Board may prescribe in keeping with the terms of this law.' It is not provided in said Section 3, or elsewhere in said Chapter 17894, that the chief supervisor of the defendant board shall have the right, power or authority, without the knowledge, consent or approval of the defendant board, as a board or body, to individually decide or determine, of his own volition or in the exercise of his individual judgment or discretion, that a public hearing 'of the board' called and conducted by him individually and without the knowledge, consent, approval or presence of the defendant board, as a board or body, should be held and conducted in any of the trade areas established by the defendant board for the purpose of hearing testimony and receiving proofs to be subsequently considered and acted upon by the defendant board as a basis or predicate for the fixing by it of minimum prices which persons, firms and corporations engaged in the affected industries in such trade area shall be required to charge their customers or patrons for the rendering of services 'in connection with' the said industries.

"10. On or prior to December 21, 1939, but not prior to December 19, 1939, Hunter G. Johnson, who was then the chief supervisor of the defendant board, without the knowledge, consent or approval of the defendant board, as a board or body individually decided and determined, of his own volition and in the exercise of his individual judgment and discretion, that a public hearing should be 'conducted by the Florida Dry Cleaning & Laundry Board on the mezzanine floor of the McAllister Hotel, 10 Biscayne Boulevard, Miami, Dade County, Florida, at 10:00 A. M. on the 2nd day of January, A. D. 1940, for the purpose of considering any and all matters which the said board is authorized to consider at public hearings according to law, including all matters having to do with the cleaning, dyeing, pressing and laundry business or industry, for the trade area of Dade County, Florida, and including the receiving of all evidence and proofs to be submitted to the board as a basis for action of the board under said law in fixing, promulgating and adopting rules and orders relating to fair competition, fair and reasonable prices and charges for cleaning, dyeing, pressing and laundry work and service, and also for the reconsideration of price-fixing provisions of Order No. 5 of the said board, dated October 15, 1937, relating to the prices of dry cleaning and laundry in the Dade County area, and the fixing, promulgating and adoption of rules and regulations relating to health and sanitation in the businesses and industry aforesaid.' The said chief supervisor, without the knowledge, consent or approval of the defendant board, as a board or body, individually and of his own volition and in the exercise of his individual judgment and discretion, caused to be published in the Miami Daily News (on December 21, 1939) and the Miami Herald (on December 22, 1939), two newspapers published and of general circulation in the said trade area (Dade

County) a notice that such a hearing would be 'conducted by the Florida Dry Cleaning & Laundry Board on the mezzanine floor of the McAllister Hotel, 10 Biscayne Boulevard, Miami, Dade County, Florida, at 10:00 A. M. on the 2nd day of January A. D. 1940.' A true and correct copy of the said published notice (marked 'Exhibit 6') is hereto appended and made a part of this bill of complaint. The defendant board, as a board or body, did not call or order the conducting of the hearing contemplated by the said published notice and such hearing was called and scheduled by the said chief supervisor of his own volition and in the exercise of his individual judgment and discretion and without the knowledge, consent or approval of the defendant board, as a board or body."

That on January 2, 1940, a hearing as contemplated by the said notice was begun but was not completed until January 12, 1940. That the hearing was conducted and presided over by the chief supervisor. That he was not designated for such purpose by any order of the defendant Board and the defendant Board as a Board or body had not consented to or approved the holding or conducting thereof by the chief supervisor and was not present at any time at or during the hearing.

That the testimony and proofs submitted and all motions and objections made, and exceptions taken, and all rulings and decisions of the chief supervisor and all of the proceedings had and actions taken during the hearing were stenographically recorded by an official court reporter and one of his deputies, a typewritten transcript of which was attached to and made a part of the bill of complaint.

That no public hearing was held by the defendant Board in the said trade area, Dade County, Florida, subsequent to the conclusion, January 12, 1940, of the hearing referred to

and prior to the issuance of the order of March 9th, which order purported to fix prices in the trade area.

The bill then alleges that on the 17th day of August, 1937, the trade area was established in Dade County, Florida, by said Board by its order No. 5, which order was amended on March 9, 1940, by amended order No. 5, which amended order was filed March 22, 1940, in the office of the Secretary of State. This is the order of the Board complained of.

The answer admits that in March, 1940, the defendant Board issued amended order No. 5, and alleges that the original order was based upon testimony taken in 1937, and that the amended order was made upon testimony taken at the hearing above referred to.

Respondents admit that Section 3 of Chapter 17894 provides as is alleged in the bill of complaint but denies that the chief supervisor has acted in any fashion without the knowledge, consent or approval of the defendant Board and denies that the chief supervisor has exercised his personal and individual volition and judgment in the calling and conducting of public hearings on behalf of defendant Board, and alleges that the chief supervisor held such hearings pursuant to the instructions and directions of the Board and in accordance with and by virtue of authority vested in him by two orders of the Board, No. 1 and No. 29, and dated respectively the 9th day of July, 1937, and the 23rd day of April, 1938, copies thereof being attached and made a part of the answer.

The answer denies that the chief supervisor, Johnson, called the public hearing to be held on January 2, 1940, without the consent and approval of the Board, denies that the chief supervisor caused the notice of hearing to be published without the knowledge, consent or approval of the Board, but alleged the fact to be that defendant Board de-

termined that such meeting should be held and directed the chief supervisor to publish notice of such hearing and that all of the acts alleged to have been done by Johnson as chief supervisor were done by him in his official capacity as representing defendant Board while acting for and on behalf of the Board with the knowledge and consent and at the direction of the Board.

Other allegations of the bill were admitted and others denied which are not necessary to be set out here.

Order No. 1 referred to in the answer, *supra*, contains, *inter alia*, the following:

"A due and legal organization meeting of this Board having been held in Tallahassee, Florida, on July 9th, 1937, at which all members of the Board were present and qualified to perfect the organization of the Board as required by law, and to transact other legal business authorized under the Act creating said Board, and the matters hereinafter ordered having been fully considered and legally acted upon by the Board, and the Board being further advised in the premises, it is thereupon CONSIDERED AND ORDERED, as follows: * * *

"4. That Mr. E. J. Pinaire be employed and designated by the Board as Chief Supervisor under the provisions of the Act, at a salary of Two Hundred Fifty ($250.00) Dollars per month with legal traveling and incidental expenses, to serve at the pleasure of the Board and until further ordered, and to be the administrative executive of the Board in the carrying out of the terms of the Act creating the Board, subject to the general supervision of said Board, together with such other duties and powers as such Board may delegate and provide from time to time, including the right to conduct the business of the Board and to administer the provisions of the Act in the name of the Board, and in general conduct the business of the Board between meetings

of the Board, and subject to such other orders and delegation of power as the Board may make from time to time under the provisions of the said Act under which said Board is created, including the right to sign all checks, vouchers, receipts, and other legal documents and instruments in the administration of the Act creating this Board, including those for the payment of clerical, legal, and other employees and expenses subject to the final approval of the Board, provided that checks and vouchers and other similar documents authorizing the payment of money shall be countersigned by the Chairman of the Board. Such powers shall include the right to investigate the feasibility of the holding of any public hearings of the Board, and to designate the time, place and purpose of such hearings and to conduct the same in any trade area, or in the main office as authorized under provisions of the Act. Orders based on such hearings, however, shall be promulgated and executed by a majority of the Board as required by the provisions of the Act creating this Board." * * *

"9. That the Chief Supervisor be authorized and delegated to approve proper forms of licenses, receipts, applications, stationery, and other papers and documents in connection with the clerical work of the Board and that such forms when approved by the Chief Supervisor be adopted and designated as the legal and official forms of this Board for use for the purposes indicated."

Order No. 29 referred to in the answer, *supra,* is as follows:

"The Board in due and executive session, held at the main office of the Board in Jacksonville, Florida, on Saturday, April 23rd, A. D. 1938, at which a quorum was present, having given full consideration to a more economic administration of the affairs of the Board, pending a determina-

tion by the State Supreme Court as to the constitutionality of the Act under which the Board is operating, and after full consideration, the Board being fully advised:

"IT IS HEREBY CONSIDERED AND ORDERED that from and after the 1st day of May, A. D. 1938, Hunter G. Johnson be, and he is hereby named Chief Supervisor for the Board, under the terms and provisions of said Act creating the Board, with such duties, authorities and powers as are created and authorized under the terms of said Act, and as also heretofore set up and delegated to E. J. Pinaire as Chief Supervisor, the said E. J. Pinaire being relieved as said Chief Supervisor as of May 1, A. D. 1938, or upon the taking effect of this order.

"IT IS FURTHER ORDERED that compensation of said Hunter G. Johnson be fixed at one ($1.00) Dollar per year, the said Hunter G. Johnson to serve at the pleasure of the Board, or until further ordered. Let the said Hunter G. Johnson cause to be procured and executed a Fidelity bond in the sum of one Thousand ($1,000.00) Dollars, to be paid for as an expense of said Board, insuring the faithful performance of the duties and the faithful accounting for any and all funds or other properties coming into his hands as Chief Supervisor of said Board. Let all properties and records, funds and information, books of account, office files and all personal property of the Board be delivered to the said Hunter G. Johnson as Chief Supervisor of the Board, in keeping with the provisions of this order.

"Let copy of this order, properly certified, be duly prepared and posted in the office of the Secretary of State, State Capitol, Tallahassee, Florida, and a certified copy furnished the State Comptroller who is hereby directed to deal with the said Hunter G. Johnson as said Chief Supervisor of the said Board, in keeping with the terms of this

order. DONE AND ORDERED at Jacksonville, Florida, this 23rd day of April, A. D. 1938."

These orders are quoted because their phraseology is important to the disposition of this cause.

Involved here are the provisions of Sections 3, 4, 5 and 6 of Chapter 17894, Acts of 1937, being Sections 4151 (444) to Section 4151 (447) C. G. L., Permanent Supplement, 1940.

It is not necessary for us to quote these sections because they are available in the published statutes.

In the state of the pleadings it appears to us that the only question which we can definitely determine at this time is that stated by the petitioner, *supra,* because this question presents the only matter adjudicated by the lower court. This must be answered in the negative. When our mandate goes down, however, the way will be open for the chancellor to consider other grounds which appear to be insisted upon to warrant injunction because the answer tenders issue of facts, the determination of which will control as to other matters the adjudication of which is sought in this proceeding. It will be observed that in Order No. 1, *supra,* it is provided that the chief supervisor is, "to be the administrative executive of the Board in the carrying out of the terms of the Act creating the Board, subject to the general supervision of said Board, together with such other duties and powers as such Board may delegate and provide from time to time, including the right to conduct the business of the Board and to administer the provisions of the Act in the name of the Board and in general conduct the business of the Board between meetings of the Board, and subject to such other orders and delegation of power as the Board may make from time to time under the provisions of the said Act under which said Board is created, including the

right to sign all checks, vouchers and other legal documents and instruments in the administration of the Act creating this Board, including those for the payment of clerical, legal and other employees and expenses subject to the final approval of the Board, provided, that checks and vouchers and other similar documents authorizing the payment of money shall be countersigned by the Chairman of the Board. Such powers shall include the right to investigate the feasibility of the holding of any public hearings of the Board, and to designate the time, place and purpose of such hearings, and to conduct the same in any trade area, or in the main office as authorized under provision of the Act. Orders based on such hearings, however, shall be promulgated and executed by a majority of the Board as required by the provisions of the Act creating this Board."

And in Order No. 29, *supra,* it is provided:

"IT IS HEREBY CONSIDERED AND ORDERED that from and after the 1st day of May, A. D. 1938, Hunter G. Johnson be and he is hereby named Chief Supervisor for the Board, under the terms and provisions of said Act creating the Board, with such duties, authorities, and powers as are created and authorized under the terms of said Act, and as also heretofore set up and delegated to E. J. Pinaire as Chief Supervisor, the said E. J. Pinaire being relieved as said Chief Supervisor as of May 1st, A. D. 1938, or, upon the taking effect of this order."

Under the terms of these Orders the Board attempted to delegate to the Chief Supervisor the right "to investigate the feasibility of holding any public hearings of the Board and to designate the time, place and purpose of such hearings and to conduct the same in any trade area or in the main office as authorized under the provisions of the Act."

This delegation of power is not contemplated by the terms of the Act, the pertinent sections of which are quoted, *supra.*

Our construction of the provisions of the Act is that the determination of whether or not a public hearing should be had is a matter to be determined by the Board and that determination cannot be delegated to the Chief Supervisor or to any employee. The Board must officially call the hearing and designate the time and place for such hearing and give notice thereof and designate the person or persons before whom the hearing is to be had. Unless this procedure is followed, the hearing is illegal and void. In the conduct of the hearings as provided by statute, sections 4 and 5, *supra*, certain powers and duties are attempted to be conferred upon the Chief Supervisor or other employee of the Board, which partake so much of the exercise of sovereign power that the same cannot be lawfully delegated, even by the Legislature, to be performed by one not commissioned as an officer.

The record in this case shows that the chief supervisor during the hearing was requested to issue subpoenas *duces tecum* for the production of certain books and records and that in the exercise of the discretion assumed to be within his power declined to issue such subpoenas. He did issue subpoenas requiring the attendance of witnesses and ruled upon the admissibility of testimony. If the chief supervisor may in the exercise of his discretion determine what evidence may be put in the record, may determine for whom subpoenas may be issued and may promulgate rules and regulations governing the conducting of a hearing and enforce such rules and regulations against parties appearing at such hearing, he would thereby exercise sovereign power over the rights of citizens. The Constitution does not contemplate that essential governmental powers or authority may be exercised by one not a duly commissioned officer. See Dade County v. State, 95 Fla. 465, 116 Sou. 72; City of Miami Beach v. State, 95 Fla. 697, 116 Sou. 480; State

*ex rel.* Swearingen v. Jones, 79 Fla. 56, 84 Sou. 84, and McSween, *et al.,* v. State Live Stock Sanitary Board, *et al.,* 97 Fla. 749, 122 Sou. 239, 65 A. L. R. 508, in which it was said:

"The powers and duties conferred upon the State Veterinarian by the statutes cited as well as by the rules and regulations of the Board aforesaid, are most important, varied and delicate in their nature, which can be successfully performed only by one of large experience and knowledge of affairs, and are in a high degree authoritative, discretionary and final in their character. He is the instrument by and through which such Board functions and the object, purpose and intent of the Act in question effectuated.

"The administrative functions in the execution of the powers and duties conferred by statutes and the rules and regulations of the Board of which he is the chief executive officer, require the exercise of State governmental authority, involving discretion and responsibility, and not merely clerical or expert assistance, and are such as the Constitution contemplates shall be performed by officers elected by the people or appointed by the Governor.

"If the powers and duties of the State veterinarian prescribed by the rules and regulations of the State Live Stock Sanitary Board, which may be construed as an attempt to confer upon such veterinarian sovereign powers be eliminated as unauthorized by a valid statute, yet there remains the powers and duties prescribed by the statute cited, the exercise of which the Constitution contemplates shall be by and only by a duly elected or appointed officer. These powers and duties enter into the very reason for the existence of such position, if the obvious intent of the Legislature is to be regarded with respect to the position of the State Veterinarian, his powers, duties, emoluments, tenure

and his liabilities, and therefore it is impracticable to eliminate from the statutes all of the provisions that serve to render the.position an office instead of an employment, leaving merely a shell without the meat, a shadow without the substance. Holding as we do that the State Veterinarian can be created only by the appointment of the Governor or elected by the people, it follows that such position as is attempted to be created by the Act is unconstitutional and that part of the Act providing for the appointmen of such officer is void and unconsitutional. While it is clearly within the province of the Legislature to create an office of the nature herein considered, yet the Constitution of the State expressly and mandatorily requires that provisions shall be made to fill such offices either by an election by the people or appointment by the Governor. Art. III, Sec. 27. As the Legislature has not yet made such provisions, there exists no authority to appoint such an officer."

We do not mean to hold that under the provisions of the statute the Board may not designate the Chief Supervisor, or some other suitable employee, to conduct a hearing which the Board has officially determined should be called and held and which the Board has, by proper order, called to be held under such rules and regulations as shall have been promulgated by the Board, not delegating to the chief supervisor or other person the power to exercise his discretion in determining the admissibility of the evidence, or in determining whether or not subpoenas may be issued, and without attempting to confer upon such chief supervisor or other.employee the power to promulgate and enforce the rules and regulations in the conducting of such hearing.

The rules and regulations governing the hearings must be promulgated by the Board, members of which are officers under the provisions of the Constitution (Sec. 27, Art. III),

and the enforcement of those rules and regulations is a matter within the province of the Board and may not be delegated to an employee.

The Board may for any designated hearing authorize the person designated to conduct such hearing to issue subpoenas for witnesses whose presence may be required in the name of the Board, but may not delegate to the employee the power to determine whether or not a requested subpoena should be issued, because these matters involve the exercise of judicial discretion and, while the Legislature may delegate judicial functions to a Board or Commission, it is not authorized to delegate such functions to a mere employee of such Board or Commission.

It may be that the respondents could show on final hearing or upon a hearing on motion to further consider the application for temporary restraining order that the chief supervisor was legally designated by the Board to hold the particular hearing involved and that he was allowed to exercise in that regard only such functions as an employee, not an officer, might exercise.

It, therefore, follows that the writ of certiorari will be granted and the order challenged will be quashed without prejudice for such other proceedings in the lower court as the parties may be advised in accordance with law and equity, including the consideration of the application for restraining order.

So ordered.

TERRELL, C. J., WHITFIELD, BROWN and CHAPMAN, J. J., concur.

THOMAS, J., dissents.