H. A. TERRELL and A. Y. FINLEY

*v.*

STATE OF TENNESSEE.

361 S.W.2d 489.

(*Nashville,* December Term, 1961.)

Opinion filed September 7, 1962.

Petition for Rehearing Denied November 9, 1962.

634

CHARLES F. FRAZIER, Nashville, for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, WALKER T. TIPTON, Assistant Attorney General, Nashville, for the State.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

The plaintiffs in error were indicted for violating sec. 39-1953, found in the Cumulative Supplement to T.C.A. Their cases were tried by the trial judge without the intervention of a jury, and he fined each one a minimum of $50.00 and sentenced them to serve thirty days in jail. From this judgment an appeal has been seasonably perfected, able briefs filed and arguments heard. We now have the matter for disposition.

Insofar as is necessary to here quote the statute alleged to have been violated provides:

"It shall be unlawful for any person to solicit or accept a fee, consideration, donation, or to offer for sale or sell advertising as a representative, or under the guise of representing a police, judicial or safety association, partnership or corporation unless such person is employed by or is a member of an organization composed of persons elected, employed or appointed pursuant to law, to engage in police, judicial or safety work or activities, except that the commissioner of safety may authorize in writing any person to engage in such activities until such authority is revoked in writing by the commissioner. The term 'police' as used in this section shall include any person duly elected, appointed or employed as provided by law to engage in law enforcement work." Sec. 39-1953, T.C.A.

Then follows a paragraph denominating the violation of this section a misdemeanor and fixing the punishment as a fine from $50.00 to $500.00 and not more than thirty days in jail, and providing that the section does not apply to police or judicial organizations directed by any agency or department of the government.

These plaintiffs in error were operating under a corporate name of a publication called the Tennessee Police News. They were soliciting ads for this magazine all over the State. A number of witnesses from various sections of the State were introduced by the State who had purchased ads from one or the other of these plaintiffs in error. One of these witnesses, a truck operator, stated that Finley called him from Nashville and solicited advertisements for this publication. This witness lived in Henderson, Tennessee. This witness stated that during the conversation he received the impression that the funds solicited would go for better law enforcement and that a membership card, which he would receive by advertising with the concern would be helpful if one of his trucks was picked up.

Another witness from Murfreesboro, Tennessee, was likewise contacted by Finley and asked to take an ad in this police news. This witness stated likewise that he was left with the impression that an ad would benefit the safety program. He stated that as a result he took a $45.00 ad and received a membership card which read, "Tennessee Police and Judicial Officers Association, Inc." and that this card was signed by the plaintiff in error, Terrell, as Director.

Another witness was placed on the stand from Cleveland, Tennessee. He stated likewise that he was contacted by Mr. Finley over the phone who solicited an ad for this police news, and that he was left with the impression that if he took an ad it would help law enforcement.

Another witness from Cleveland, Tennessee, was likewise put on in behalf of the State, and he stated that he had received a telephone call asking him to place an

ad in the Tennessee Police News, and that the person who called him left the impression that if he purchased such an ad he would receive a card, and such card would be beneficial to him if he was ever stopped upon the highway while operating his car.

The Manager of the Southern Bell Telephone Company in Nashville was likewise put on by the State and he testified that during the period from April, 1961, to September, 1961, the monthly bills of this concern for long distance calls over the State ranged from $430.00 plus to $972.00 plus. The testimony of this witness was objected to and is the basis for one assignment of error which will hereinafter be discussed.

The Commissioner of the Department of Safety for the State was offered as a witness and he testified that he had not granted permission under the Act and that no application had been made to him by these parties to solicit funds in the manner in which they did.

The Sheriff and the Chief of Police of Davidson County in Nashville were put on the stand, and they testified that as far as they knew that neither of the plaintiffs in error were members of any police organization or agency.

Another witness from Dresden, Tennessee, stated that he received a call from Mr. Finley soliciting an ad in this police news, and from this call he was led to believe that if he advertised in this police news he would receive a card which would be helpful to him if it were ever presented to a patrolman.

Venue was shown by placing on the stand a witness who said that all these calls originated in Davidson County which was the location of the principal office.

Neither plaintiff in error took the witness stand. They have assigned some thirteen assignments of error; all of which we will attempt to answer without particularly referring to them seriatim. Assignments (1) through (5) and (9) and (10) deal with the sufficiency of the proof.

■ We have quoted heretofore the relevant portions of the statute involved. From which it can be seen that in order to convict a person for the violation of this statute, it must be shown that the person solicited or accepted a fee, consideration, donation, or they sold, or offered for sale, some type of advertisement as a representative of, or under the guise of representing a police, judicial, or safety association, partnership or corporation. All the evidence in this case, as we indicated above, is uncontroverted, and from it we think that there can be no other conclusion but that the plaintiffs in error were guilty of selling advertisements contrary to the very terms of the statute. The main question, of course, under this proof and for our determination as it was below is, does this proof show that the advertising solicited here was sold by one representing himself, or acting under the guise of representing some law enforcement association, etc., according to the language of the statute? We think it does.

All five witnesses offered bought ads, and they were all left with the understanding that the funds would go for better law enforcement and at least part of the witnesses were led to believe by having these membership cards they would be in a far better position if they happened to be arrested for violating the law while operating their cars on the highway. One of these cards

which was signed by one of the plaintiffs in error as a Director shows that the bearer of the card is a member of the Tennessee Police and Judicial Officers Association. Its very title within itself represents that it is an association of law enforcement officers, which under this record these plaintiffs in error were not. Taking together all of these facts, it seems perfectly obvious that these people were fraudulently representing to those that they contacted that they were connected with a law enforcement body of the State one way or the other, and that as such they were selling this advertisement within the meaning of the statute.

█ We referred above to the fact that the testimony of the Telephone Manager as to the amount these gentlemen had spent for telephone calls during a certain period was objected to and was assigned as one of the errors. This witness testified that these people had an unlisted telephone and as to various monthly bills during three or four months there and how much the bills amounted to. He showed that there were a great many long distance calls. As we see it, when the case is tried, as here, without the intervention of a jury the question of whether or not admission of this testimony was error is of no particular importance, because unless such incompetent testimony was absolutely essential and necessary to a conviction it would be our duty to review all the facts without regard to this incompetent testimony and then decided the case on the competent evidence. If it should be concluded that this testimony was incompetent under this record it will make no difference because there is ample competent evidence to sustain the verdict. See *Smith v. Hubbard,* 85 Tenn. 306, 2 S.W. 569; *Montaque v. Thompson,* 91 Tenn. 168, 18 S.W. 264; *Nance v. Smith,*

118 Tenn. 349, 99 S.W. 698; *Southern Ry. v. Bickley, McClure & Co.* 119 Tenn. 528, 107 S.W. 680, 14 L.R.A., N.S., 859; and *Kittel v. Steger,* 121 Tenn. 400, 117 S.W. 500.

██ It is very forcefully argued by the plaintiffs in error that the State failed to show that these plaintiffs in error did not come within one of the exceptions provided in the statute. The statute does except certain categories from the operation of its provisions, but these exceptions constitute defenses to a charge under this statute, and the burden is on the plaintiffs in error to show their existence and that they come within these exceptions. This has been held in this State for a long time, and it is particularly well pointed out in *Knowling v. State,* 176 Tenn. 56, 138 S.W.2d 416, where this Court relied upon and quoted from two or three well recognized texts on evidence as well as cases from a number of outside jurisdictions. The Court there quotes from American Jurisprudence thus: " 'But where a negation is peculiarly within the knowledge of the defendant, the burden is on him to establish that fact. Thus, where a charge is made that the defendant carried on a certain business without a license, the fact that he has a license is peculiarly within his knowledge and he must establish that fact or suffer conviction,' * * *." citing authorities, which are set forth in the Knowling case. Thus it is we must overrule this assignment.

██ It is argued that the District Attorney General continuously made reference to fraud where such was not an element of the offense. Under this narrative bill of exceptions we do not find anything that would give us this feeling, but, of course, what this offense amounts to

is that the persons, who ran this police news and the way they have tried to get advertisements in it is to surreptitiously infer that the police organizations are back of it, and by the person taking an advertisement he will benefit or get some favors from the police. Of course, this was a fraudulent thing to do, and is in effect a fraudulent act. The statute is under the title in the Code of "Fraud or False Dealing". Clearly by the facts herein it is either fraud or false dealing. It is the intent back of what these people have done, or are doing, that makes the violation of the statute. This intent may be inferred from the various acts of these plaintiffs in error. *People v. Glubo*, 5 N.Y.2d 461, 186 N.Y.S.2d 26, 158 N.E.2d 699. We think there is no error here.

 It is very forcefully argued that this statute is unconstitutional as being class legislation. From the argument it would appear that plaintiffs in error take the position that this statute was enacted just merely to try to stop them from running this police news publication, and didn't apply to anybody else. The record fails to show that there is any different status of these plaintiffs in error and their organization and anybody else, or fails to show that it was directed to anyone in particular, but it was directed against the evil which was being committed by such organizations inferentially representing themselves as one thing so as to sell their advertisements as a matter of fact they were not such. It is well settled that it is incumbent upon a person attacking the constitutionality of a statute to carry the burden of proof. Clearly the plaintiffs in error have not done so. A very amplifying statement on the proposition here is found in *Darnell v. Shapard*, 156 Tenn. 544, 3 S.W.2d 661, which supports the statement we have just made

and others which answer the question here. As we have said hereinbefore the very obvious purpose of this statute was to prevent fraud or deceit upon the public as was here attempted to be, and was, fostered upon these individuals through innuendo and statements made in reference to the organization which these defendants represented. The very purpose of the statute was to prevent this thing. It is always within the police power of the state for the Legislature to enact statutes which are prohibitory to prevent fraud, and when such is done they do no violation to the Constitution even though they might be so broad as to include some innocent acts because we all know that it is extremely difficult to separate the good from the evil. See *State v. Co-operative Store Co.,* 123 Tenn. 399, 131 S.W. 867; *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177, L.R.A.1916F, 177; and *Bird v. State,* 131 Tenn. 518, 175 S.W. 554. We have carefully considered this statute and can find nothing therein to make it violative of the Constitution of Tennessee or of the United States Constitution.

 It is argued under one of the assignments that the statute is unconstitutional because the grant of authority to the Commissioner of Safety, who testified herein, to approve various groups to solicit advertisements is an unwarranted delegation of authority because the statute doesn't allow any review of his decision. Of course, this is an erroneous assumption, because in addition to the common law writ of certiorari the statute, sec. 27-901 et seq., T.C.A., does allow and make the action of a Commissioner reviewable.

After careful study of the matter we are satisfied without question that there is no error in this record, and consequently the judgment below must be affirmed.

## On Petition to Rehear

The plaintiffs in error by able counsel have filed herein a courteous, respectful petition to rehear. After a thorough consideration of this petition and reviewing the authorities therein cited, we must overrule the petition for reasons hereinafter stated.

■ In the first assignment on this petition the case of *Florida Dry Cleaning and Laundry Board v. Economy Cash and Carry Cleaners,* 143 Florida 859, 197 So. 550; and 73 C.J.S. Public Administrative Bodies and Procedure sec. 36, are cited as authority for the proposition that the statute under which these plaintiffs in error were convicted is unconstitutional because this statute improperly delegates legislative authority to a member of a board. We have no complaint with the Florida case and the statements made in C.J.S., but upon careful consideration of these authorities we do not think they are in point. The statute (sec. 39-1953, T.C.A.) merely says that the statute is not effective if the person violating it is granted permission to do the things therein condemned if these parties are authorized to do this act by the Commissioner of Safety. Under such a situation an administrative officer may exercise such authority when the authority given him is within the limits of the power dedicated to him by the Legislature. Under such a situation his acts will not be held invalid as encroaching upon the powers of the Legislature. *Gatlinburg Beer Regulation Committee v. Ogle,* 185 Tenn. 482, 206 S.W.2d 891. All that this Commissioner does under this statute is to give parties the right to do what the statute prohibits, if in his judgment he thinks they are properly qualified

persons to do these things. It is reasonably necessary that such authority be given the Commissioner and when he exercises the proper discretion in granting or refusing this authority this does not encroach upon the judicial or the legislative branches of the government. The authority given the Commissioner is for the benefit of the individuals who are doing this and when they do not get this permission they are not in a position to claim the statute unconstitutional because the Commissioner has such authority, especially when they have violated the statute without procuring this permission.

Second, it is again contended that since the Charter under which these plaintiffs in error were acting was granted by the Secretary of State and that this Charter could be revoked by the Secretary of State or by a quo warranto proceeding to revoke it that this is an affirmative showing that under this Charter this organization was regulated by the Secretary of State until the Charter was revoked. This argument is based upon the first sentence in the last paragraph of sec. 39-1953, T.C.A., the major portion of which was quoted in the original opinion, which provides:

"This section shall not apply to any police, judicial or safety organization directed or regulated by any agency, department or branch of state government."

Obviously the purpose of this Section of the statute is to negative any criminal intent when those violating the statute are members of a bonafide police, judicial or safety organization and such organizations are not those required to obtain the permission of the Commissioner

of Safety to do the things that this statute prohibits. The sentence quoted from this statute herein certainly has no application to the factual situation as developed in this record, which is shown by our original opinion.

For reasons here the petition to rehear is denied.