Paul Eugene VANCE, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

June 30, 1977.

Certiorari Denied by Supreme Court Nov. 14, 1977.

Ham Patterson, Memphis, for appellant.

Brooks McLemore, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Joseph B. Dailey, Asst. Dist. Atty. Gen., Memphis, for appellee.

RUSSELL, Judge.

## OPINION

This is an appeal by Paul Eugene Vance from his convictions for professional gambling in violation of T.C.A. § 39–2032; maintaining a gambling premise in violation of T.C.A. § 39–2036(4); and encouraging, promoting, or exhibiting a gambling table or device in violation of T.C.A. § 39–2002. Jail sentences for the latter convictions were ordered served concurrently with the two to three years in the penitentiary fixed for professional gambling; and $1,000 fines were levied in each case.

Vance was unquestionably and admittedly operating a storefront gambling premise in Memphis. His effort at a defense was based upon his contention that the operation was church operated. The brief and argument presented in his behalf upon this appeal consists of only two sentences (aside from the statement of the assignments of error and the statement of the case), wherein it is said that the general gaming statutes of Tennessee do not apply to religious groups operating bingo games, lotteries or similar games of chance, and that the device for which the defendant was indicted was a lottery. (The three assignments of error contend that the evidence preponderated against the verdict, that the game of chance conducted by Vance was legal because pursued by a religious organization, and that the sales tax exemption certificate of the Christian Church of Faith should have been admitted into evidence.)

■ This case boils down to the fact that Vance claims an affirmative defense to operating a gambling house; that is, that it was church operated. It is unnecessary for us to examine the evidence on this point with strictness, because Vance has utterly failed to present any evidence that would qualify his operation for exemption as that of a religious or charitable group under that provision of the law, T.C.A. § 39–2033(8), which grants such institutions exemption only "if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member or employee of such organization and if no part of the gross receipts derived from such activity is used for any other than benevolent, charitable or religious purposes or for the purpose of constructing, maintaining of renting a building to be occupied by such organization". As the State points out in its brief, there is no such showing in this case. While Vance presented evidence that his was a church operation, engaging also in some charity, no evidence was presented tending to show that no person benefitted individually or that all of the gross receipts were used for benevolent, charitable or religious purposes.

■ The law in Tennessee is that where certain categories of activities similar to the acts which constitute a crime are exempted from criminal liability by an independent section of the act defining the particular crime, it is up to the defendant to bring himself within the exemption. *Villines v. State*, 96 Tenn. 141, 33 S.W. 922 (1896). This is in accord with other jurisdictions. This language appears in *Wharton's Criminal Evidence*, 13th Edition, Vol. 1, § 20:

As a general rule, the defendant must prove that he is within the operation of an exception to a penal statute in order to take advantage of it.

\* \* \* \* \* \*

An exception which is not located in the enacting clause of a statute is treated as a matter of defense in the ordinary case; but an exception found in the enacting clause is regarded as a matter of defense only when the evidence concerning it is peculiarly within the knowledge or at the disposal of the defendant, or, according to a few authorities, only when the statute is interpreted as making the exceptive circumstances an excuse or justification for the defendant's conduct in such a way as to regard it only as defensive matter. Thus, a number of courts have held that the prosecutor's case is supported in the first instance by eviof the facts properly stated in the charge, i. e., those facts necessary to bring the defendant under the general prohibition of

the enacting clause. The prosecutor need not negative, by proof in advance, exceptions not found in that clause.

\* \* \* \* \* \*

When the enacting clause contains a general prohibition intended by the legislature as describing prima facie the conduct proscribed, and hence the phrase referring to other provisions of the statute is disregarded in the prosecution's charge, the burden is on the defendant to offer evidence of the exceptive facts. When an exceptive provision referred to in the initial language of the enacting clause is taken to be incorporated with that language as essential to complete the general prohibition of the statute, the burden is upon the prosecution to negative that provision, prima facie, as part of its main case. There is no such burden imposed on the prosecution, however, when the facts hypothesized in the exceptive provision are peculiarly within the knowledge of the defendant, or the evidence concerning them is within his private control.

There being no evidence that Vance qualified for exemption from the provisions of these statutes, which he clearly violated, we affirm the convictions.

DAUGHTREY, J., concurs.

GALBREATH, Judge, dissenting.

The Christian Church of Faith, a duly chartered religious corporation in Tennessee, ostensibly had operated for its benefit by the appellant, who testified he was ordained as a minister by the Church of Gospel Ministry and the Calvery Grace Christian Church (now operating as the All Faith Temple in Chattanooga, Tennessee), a bingo and lottery parlor until raided by the Memphis Vice Squad on the 26th of December, 1975. The majority affirms his conviction for violating T.C.A. § 39–2032, proscribing professional gambling, and related activities. I dissent.

I fear that the majority wanders into the forbidden thicket of the First Amendment in such a manner that, if a valid intrusion, will raise once again the centuries old inquiry into the propriety of government defining what constitutes an organized religion.

I cannot concur in the majority's view that the burden of proving a negative, i. e., "[that] no part of the gross receipts" from the church sponsored gaming inured to his benefit, is on the defendant. But even if he did have to in effect prove his innocence, I believe the record demonstrates that charitable works were carried out by the church and the defendant testified on cross-examination when asked what happened to money derived from gambling activity, "It went into the general fund of the church." When pressed further and upon being asked into whose pockets the money went, the defendant rather picturesquely replied, "It went into the church's pocket."

The majority's opinion finds that the appellant failed to bring himself into the exception found in T.C.A. § 39–2033(8) and quotes at length from *Wharton's Criminal Evidence*, 13th Edition, Vol. 1, § 20. However, the majority fails to quote all of that section especially where it is pointed out that:

"By weight of authority, when evidence appears which tends to bring the defendant within an exception not located in the enacting clause, the burden of proof is on the prosecution, on the whole case, to overcome that evidence beyond a reasonable doubt. Opposing decisions would place the burden of proof on the defendant to establish the exceptive facts by a preponderance of the evidence. Some of the decisions which might otherwise be cited to support the view that the technical burden of proof is on the defendant should be distinguished because of the wording of the particular exception. When words occur in a defensive exception, such as 'if it shall appear,' or 'if it shall be made to appear,' or 'if it shall be proved,' the frequent inference is that the legislature intended to place the burden upon the party whose place it was to go forward under the exception to establish the facts under it.

\* \* \* \* \* \*

"As a general proposition, where an exception merely refers to, or carves out, other grades or phases of the same offense, it need not be negatived, whether the reference is made by adverting to other provisions generally, or by an exception of the facts characterizing the other type of the crime."

This situation on the burden of proof for a statutory defense is similar to the situation when insanity is raised as a defense. There is a presumption of sanity which results in placing the burden of showing insanity at the time of the commission of the crime upon the defendant in the first instance. However, if the evidence raises a reasonable doubt as to the defendant's sanity, such evidence relieves the defendant of further proof upon the issue and shifts the burden to the prosecution. *Collins v. State*, Tenn.Cr.App., 506 S.W.2d 179 (1973).

The law in Tennessee is not clear as to which party has the burden of proving a statutory defense, when that burden is discharged, and when the State must rebut a showing that a defendant comes within a statutory exception. The case cited by the majority is inapposite.

For example, in *Griffin v. State*, 109 Tenn. 17, 70 S.W. 61, 65 (1902), it is pointed out that on a prosecution for taking any female from her father, etc., without his consent, for the purpose of prostitution or concubinage, an accused may discharge the burden on him of showing the unchastity of the female by introducing enough testimony to raise a reasonable doubt as to her chastity. Although not altogether clear from that opinion, it seems some proof as to the chastity of the female in question was introduced in *Griffin* so as to provide a basis for the jury to find beyond a reasonable doubt that that woman was chaste.

Other Tennessee cases refer to the rule that where the negation of a fact is peculiarly within the knowledge of the defendant, the burden is on him to establish that fact. See *Knowling v. State*, 176 Tenn. 56, 138 S.W.2d 416 (1940), *Terrell v. State*, 210 Tenn. 632, 361 S.W.2d 489 (1962). However, it appears that in both *Knowling* and *Terrell* (which is based on *Knowling*) *supra*, the defendants failed to present *any* evidence to cause their initial burden to shift. Consequently, while those cases appear rightly decided, they cannot be relied upon as establishing a rule applicable to where, as in the instant case, the defendant presents enough proof to shift the burden to the State and consequently requires it to prove the point in issue beyond a reasonable doubt. Here the State has failed to show that any "part of the gross receipts" from the gaming were devoted to noncharitable purposes.

Substantial proof was adduced that religious services and charitable works had been conducted by and on behalf of the church, although from the record it is plain that the theory of the State was that the church was of questionable substance and existed only so that gambling could be carried on in its name.

Proof was presented that the church sponsored a recreation center; conducted group meetings with young adults, runaways and drug addicts; that money was given to assist victims of burned homes; that food was provided for the poor; and in one instance, as much as three hundred dollars was donated to one needy person.

Testimony of more orthodox church activities such as services on Sunday and preaching was adduced and none of the proof, to the effect that the church was in fact a church and that its charitable activities were genuine, was, to my view, negated.

The gambling laws of this State permit games of chance to be conducted under certain restrictions specified in T.C.A. § 39–2033(8), exempting churches, among other eleemosynary institutions, from the criminal sanctions imposed on other forms of gaming.

The type of gambling described in the record before us is no more, nor no less, than the activities carried on regularly by many other churches, labor unions, and fraternal and social clubs throughout the State. This limited legalization of gam-

bling was authorized by the General Assembly and so long as an organization falling within the exempt status is the recipient of the proceeds, after deductible expenses from the otherwise unlawful activity, there is no violation involved.

Not involved here is the issue of what sanctions would result if one conducting bingo or other permissible types of gaming for a church or other charitable organization pockets the proceeds so as to defraud the intended recipient of any profits. No such felony as embezzlement or obtaining money under false pretenses has been charged. The State introduced no proof that the appellant pocketed the proceeds from the gambling operation.

What does or does not constitute a church has addressed itself to the conscience of individuals and governments for centuries. The Christian Church of Faith has evidentially convinced both the State of Tennessee and the United states Internal Revenue Service that it is, indeed, a church.[1] We do not believe this Court, nor a jury in Shelby County, has the authority to withhold from any organization duly incorporated and recognized by secular authority, as a religious organization, the recognition claimed by the church said to be served by the Reverend Vance. If he is hiding behind a false and hypocritical religious facade, he is among many others who do so for various and plentiful reasons. A Higher Authority than ours will have to judge his sincerity.

The State having completely failed to rebut the prima facie showing by the appellant that he came within the applicable exception, I would reverse the conviction.

---

1. It is not clear that documents admitted for identification purposes only purporting to establish tax exempt status were in effect at the time of appellant's arrest.