## THE STATE *versus* TRUE WHITTIER.

In an indictment under St. 1825, c. 312, for maliciously injuring a dwelling-house, not having the consent of the owner thereof, where at the time of the commission of the offence, the house injured was not in the possession of the owner, but of a tenant at will under him, it may well be described as the house of the tenant.

On the trial of an indictment, after the jurors have given in their verdict and have separated, and there has been an opportunity for others to converse with them, to operate upon their judgments, prejudices, or fears, to induce them, or some of them, to give a different account or explanation of it, it is not considered as regular, or authorized by our practice, to permit new inquiries to be made and explanations to be given; but if it be done, and the accused could not be injured thereby, the verdict will not be set aside.

Thus, where there were two counts in the indictment, properly joined, and there was no evidence to support the second, and the jurors returned a general verdict of guilty, and separated, and afterwards, on inquiry by the Judge, replied that they found the accused guilty on the first count, and not guilty on the second; the Court declined to set aside the verdict.

And if the finding had not been limited to the first count by the jury, the attorney for the State might have cured the difficulty by entering a *nolle prosequi* of the second count.

On the trial of a person indicted for a criminal offence, the presiding Judge is not obliged to permit the introduction, even on cross-examination, of a collateral fact which may occasion a new and distinct issue.

A child of any age, capable of distinguishing between good and evil, may be examined on oath; and the credit due to his statements, is to be submitted to the consideration of the jury, who should regard the age, the understanding, and the sense of accountability for moral conduct, in coming to their conclusion.

A preliminary examination of a child under fourteen years of age, prior to his testifying to the jury, is only necessary to satisfy the presiding Judge, that he may testify; and if the Judge is satisfied of the propriety of admitting the witness, it is sufficient for that purpose.

Where the indictment alleges, that the accused, "beat in the windows and broke the glass of a dwellinghouse, not having the consent of the owner thereof," it is not incumbent on the government, after proving the injury to the building, to introduce any direct evidence that there was no consent of the owner; but being a matter peculiarly within the knowledge of the accused, the burthen of proof is upon him to show that he had such consent.

EXCEPTIONS from the Middle District Court, REDINGTON J. presiding.

This was an indictment against the defendant, containing two counts. The first count alleged that the defendant on the 20th of April, 1841, beat in the windows and broke the glass of a building, being a dwellinghouse, the property of one David W. Jackman, and that said Whittier had not the consent of the owner of said house for the doing said injuries. The second count was like the first, except it was alleged that the said house was the property of Jacob Butterfield. The county attorney admitted, that both counts were for the same offence. The only evidence adduced in relation to the ownership of the said house was that of said Jackman, who was a witness for the State, and who testified that he hired said house by parol of said Butterfield for one year, not then expired, and was occupying the same under that letting, when it was injured as aforesaid. The defendant requested the Judge to instruct the jury, that it was not proved, that said house was the property of said Jackman; but the Judge did instruct the jury, that if said Jackman's testimony was believed, he was the owner of said house, and that the proof aforesaid was sufficient to show that fact for the purposes of this indictment. The Judge also instructed the jury, that it was incumbent on the defendant to prove that he had the consent of the owner to do the injury aforesaid, and that it was not incumbent on the government to prove that there was no consent of the owner. The Judge further instructed the jury that there was no sufficient proof that said Butterfield owned the said house, and that the defendant could not be convicted on both of said counts. The jury found a general verdict of guilty. After they had so found, the jury separated and went away from the court house to dine. After they returned, having dined, the Court inquired of the foreman, whether they found the defendant guilty on both counts, and the foreman replied that they found him guilty on the first count, and not guilty on the second count, to which the jury assented; the defendant objecting to the putting said inquiry by the Court and the answer aforesaid. It appeared by the testimony of said Jackman, that there had been a difficulty between him and the defend-

State v. Whittier.

ant, growing out of a prosecution for a criminal offence against said Jackman's wife's mother, and the defendant asked said Jackman whether said Whittier was the complainant against the mother of his wife in said criminal prosecution, to which question the attorney for the State objected, and the Judge sustained the objection, and the question was not answered.

Hiram Irvine was called by the State as a witness. He stated that he was thirteen years old. The defendant claimed the right to have the boy interrogated by the Court, for the purpose of ascertaining whether he understood the nature of an oath, but the Judge declined to make the examination, or to put interrogatories for that purpose. The defendant claimed the right to examine the witness for that purpose, but the Judge ruled that the defendant had not the right claimed, and the witness was examined by the attorney for the government in the first place in chief. Upon cross-examination, the defendant's attorney inquired of the witness, if he knew the nature of an oath, to which he replied, that "he thought he knew something about it." The defendant's attorney then asked him what it was, and what would be the consequences of stating falsely as witness, to which he replied, that "his oath would be good for nothing," and this was the only account of the matter he gave to the defendant's attorney. He was thereupon asked by the county attorney, "if God would approve his telling what was untrue;" to which he replied "that he did not know." He was then asked by same attorney, "if his Maker would punish him, if he should swear falsely;" to which he answered, that "he supposed he would." In the charge to the jury, their attention was particularly called to the credibility of this witness. Said Hiram on his examination in chief, testified to facts strongly tending to show, that the defendant was guilty.

To which rulings, inquiries and instuctions the defendant excepted.

The District Judge, before affixing his signature to the exceptions, made this statement in writing: — I deem it proper to add, that though the witness, Hiram Irvine, evidently mis-

apprehended one of the questions proposed to him, his whole testimony was of such a character, as to repel all pretence of incompetency by reason of any want of general intelligence.

*Wells*, for Whittier, contended that the mere possession of a house, as tenant at will, did not support the allegation in the indictment, that the house was the property of such occupant. It has been decided, that in indictments for larceny from a house, such proof was insufficient. There is less reason for admitting it in this case.  1 Chitty's Cr. Law, 176 ; *Rex* v. *Wilson*, 8 T. R. 358.

It was incumbent on the government to prove affirmatively, that the accused had not the consent of the owner.  .The want of the consent of the owner is a constituent part of the offence, and should be both alleged and proved, to support the indictment.  1 Chitty's Cr. Law, 234 ; *Little* v. *Thompson*, 2 Greenl. 228 ; Hall's case, 5 Greenl. 409 ; *Smith* v. *Moore*, 6 Greenl. 274 ; *Comm.* v. *Maxwell*, 2 Pick. 139 ; *Comm.* v. *Tuck*, 20 Pick. 363 ; 1 Stark. on Ev. 378.

The calling of the jury to answer interrogatories with respect to their verdict, after they had separated and mixed with others was erroneous.  *Little* v. *Larrabee*, 2 Greenl. 37.

The question to Jackman was a proper one, and should have been answered.  It had a tendency to draw from the witness information affecting his credibility.

The Judge should have examined the boy, or suffered the counsel to have done so, before he was permitted to testify. When the proposed witness is under fourteen years of age, he should be examined as to his capacity, and this is to be settled before he is admitted to testify.  *Comm.* v. *Hutchinson*, 10 Mass. R. 225 ; *Jackson* v. *Gridley*, 18 Johns. R. 98 ; 2 Overton, 80 ; Greenl. on Ev. 410.

*Bridges*, Attorney General, for the State, said that the indictment should allege the property of the building to be in the occupant, and not in the owner.  Rosc. Cr. Ev. 583, 585, and cases there cited ; *The people* v. *Gates*, 15 Wend. 159.

The counsel for the State would appear sufficiently ridicu-

ious in introducing testimony to prove, that a man did not consent, that another should dash in his windows in the night. In such case the want of consent would be presumed by the jury. The rule of law is, that if facts are proved from which the jury may presume another fact, it is sufficient. 1 Stark. Ev. 324, 364. Where a fact is peculiarly within the knowledge of the accused, the government need not prove it. If he had the consent of the owner, the burthen of proof was on him to show it. *U. S.* v. *Hayward,* 2 Gall. 484; 1 McCord, 573; Rosc. Cr. Ev. 72.

The defendant cannot object to an inquiry of the jury which is solely for his benefit. The effect was merely to exempt him from punishment for a conviction on both counts. The prosecuting officer has a right to enter a *noll. pros.* to the whole of any count in an indictment, at any time. *Comm.* v. *Tuck,* 20 Pick. 356. And it is now proposed to enter it.

The question to Jackman was entirely irrelevant, and ought not to have been put. But if the inquiry was to be made, the proper proof was by the record.

Where a proposed witness is under fourteen years of age, it is for the presiding Judge to be satisfied, that the witness ought to testify, and his credit is left to the jury. It is a mere exercise of discretion in the Judge, to determine when the minor may testify, and is not the subject of revision by exceptions. There is no particular mode of doing this, and the Judge has certified that he was satisfied.

The opinion of the Court was drawn up by

SHEPLEY J. — The statute, 1825, c. 312, provided, "that if any persons shall wilfully and maliciously injure or destroy any building or other fixture, not having the consent of the owner thereof," he may on conviction be punished by fine or imprisonment. This indictment alleges in the first count, that the accused " beat in the windows and broke the glass of a building, being a dwellinghouse, the property of one Daniel W. Jackman," and that he had not the consent of the owner

therefor. In the second count, the house is alleged to be the property of Jacob Butterfield.

The testimony proved, that Jackman was in possession of the house under a parol agreement to occupy it for one year, when the same was injured. It is contended, that this was not sufficient proof of the allegation in the indictment, that Jackman was the owner. The rule of law appears to be, that possession is sufficient evidence for that purpose, unless it be that of a servant merely, who is occupying as such for another. Where one was indicted for burning the house of another, it was decided, that a tenant, who set fire to the house of his landlord before his term expired, was not guilty of burning the house of another. *Brieme's* case, Leach, 195. In the case of the *People* v. *Van Blarcum*, 2 Johns. R. 105, who was indicted for burning the county court house and jail, alleged to be the dwellinghouse of the jailer, who by permission of the sheriff, lived with his family in a part of the building, and under the same roof covering the court house and jail, the Court said, it was sufficient proof of the allegation, that it was the jailer's dwellinghouse, that it was his actual dwelling at the time of the burning.

Another exception taken to these proceedings is, that the jury returned a general verdict of guilty after having been instructed, that there was no sufficient proof to sustain the second count; and after having separated and dined, they were asked, whether they found the accused guilty on both counts, and they answered, that they found him guilty on the first and not guilty on the second. After the jurors have separated and there has been an opportunity for others to converse with them after verdict, to operate upon their judgments, prejudices, or fears, to induce them, or some of them, to give a different account or explanation of it, there would be great danger in permitting new inquiries to be made and explanations to be given; and such a course is not considered as regular, or authorized by our practice. It was decided in *Little* v. *Larrabee*, 2 Greenl. 37, where the error in the verdict was not formal, but material, that it should be corrected by granting a new trial, or

in some other mode than by the explanatory affidavits of the jurors. And there is little difference in the danger attending it, whether the explanation be made in open Court, or by the affidavits of the jurors. But it is not necessary in this case to set aside the verdict for the purpose of correcting any error in finding or in receiving it. The accused has not been injured by limiting the finding to the count, on which he might have been properly found guilty. And if it had not been so limited, the attorney for the State might have cured the difficulty by entering a *nolle prosequi* of the second count. *Comm.* v. *Tuck,* 20 Pick. 356.

The question proposed to be put to Jackman has reference to a matter quite foreign to the issue; and a Court is not obliged to permit the introduction even on a cross-examination of a collateral fact, which may occasion a new and distinct issue.

It was at one time considered, that an infant, under the age of nine years could not be permitted to testify. *Rex* v. *Travers,* Stra. 700; *Comm.* v. *Hutchinson,* 10 Mass. R. 225. And that between the ages of nine and fourteen years it was within the discretion of the Court to admit or not, as it should or should not be satisfied of the infant's understanding and moral sense. *Rex* v. *Dunnel,* East's P. C. 442. It was finally determined in *Brazier's* case, ib. 444, on consultation between all the Judges, that a child of any age, capable of distinguishing between good and evil, might be examined on oath. And Roscoe says, this has been the established rule in all civil and criminal cases since. Roscoe's Cr. Ev. 94. The credit due to the statements of such a witness is submitted to the consideration of the jury, who should regard the age, the understanding, and the sense of accountability for moral conduct, in coming to their conclusion. In this case the witness was thirteen years of age, and the counsel for the accused was permitted, on the cross-examination, to introduce for the consideration of the jury the necessary information on these points. And it could not be material to the accused, whether such information was elicited before the examination in chief or afterward. The examination before was only necessary for

the information of the Judge, who appears to have been fully satisfied of the propriety of admitting the witness.

The counsel relies with more confidence on the exception to that part of the charge, which states, " that it was not incumbent on the government to prove, that there was no consent of the owner," and that the burthen of proof was on the accused to show, that he had such consent. A number of cases are cited, which decide, that in a declaration, or an indictment, on a statute, there must be an averment, that the act was done without consent, when, as in this case, it is a substantial part of the offence. And it is thence inferred, that it is the duty of the prosecutor to introduce some direct testimony to prove it. This inference does not appear to be a legal one, or to be authorized by the decided cases. It is true, that the jury must be satisfied of the truth of all the material allegations, before they can be authorized to find a verdict of guilty. But the testimony introduced to prove one averment may be such as to raise a strong presumption, that another averment is also true. A person might be found cutting or tearing down a house, or breaking in the windows, under such circumstances, that every man of common experience would conclude, that he was not violating any law or duty. While under a different state of facts and circumstances, the conclusion would be equally satisfactory, that he must be acting in violation of both. And in the latter description of cases, there is nothing unreasonable or illegal in requiring, that one, who would avoid the effect of such a presumption, should introduce testimony to rebut it. In *Jelfs* v. *Ballard*, 1 B. & P. 468, Mr. Justice Buller says, " the plaintiff must state in his *scire facias* every thing, that entitles him to recover; but it is a very different question, what is to be proved by one party, and what by the other." And Heath J. says, " it is a common thing in actions on the game laws for the plaintiff in his declaration to negative all the qualifications, which would exempt the defendant from the penalties of those laws; but it lies on the defendant to prove, that he comes within any of them." All the Judges appear to have been of the same opinion, when such

a case was pending in their own Court, although two of them thought, that the opposite rule prevailed in convictions before a magistrate. *Rex* v. *Stone,* 1 East, 639. In the case of the *United States* v. *Hayward,* 2 Gall. 485, the information alleged an importation of goods from Nova Scotia, " in some vessel not being a neutral vessel ;" and it was decided, that the burthen of proof was on the claimant to show, that the goods were imported in a neutral vessel, if he would avoid the effect of an importation from that place. And Mr. Justice Story in that case states the general rule to be, " where the negative does not admit of direct proof, or the facts be more immediately within the knowledge of the defendant, he is put to his proof of the affirmative." Starkie, in substance, states the rule to be, that a negative is not required to be proved by the plaintiff, except where the law presumes the affirmative. 1 Stark. Ev. Met. Ed. 362 to 365. And that presumption arises only where the charge involves a criminal neglect of duty. But in *Rex* v. *Rogers,* 2 Camp. 654, on an indictment founded on the 42 Geo. 3, c. 107, for coursing deer in enclosed grounds, without the consent of the owner, Lawrence J. held, that it was necessary on the part of the prosecution to prove, that the owner had not given his consent. In *Harrison's* case, reported in Roscoe's Cr. Ev. 56, on an information for selling ale without license, it was held, that the informer was not bound to produce evidence that the accused had no license. In *Gening* v. *the State,* 1 McCord, 573, on an indictment for selling spirituous liquors without license, it was decided, that the burthen of proof was on the defendant to show, that he had a license. In *Smith* v. *Moore,* 6 Greenl. 274, where the declaration was adjudged to be defective for the omission of the allegation, that the neglect was " without just excuse," the case of *Little* v. *Thompson,* 2 Greenl. 228, where there was an omission of the allegation, " without the consent of the owner," is referred to, and the Court say, " for though the omitted averments should have been in both cases inserted ; yet in both also the burden of excusing proof would have been thereby thrown upon the defendants." In the case now un-

der consideration it was a matter peculiarly within the knowl-
edge of the accused, whether he had obtained the consent of
the owner; and in such case, the general rule, the weight of
authority, and the. declared law in this State, authorized the
charge of the District Judge.

*Exceptions overruled.*