**STATE of Maine**

**v.**

**John J. WHITE.**

Supreme Judicial Court of Maine.

Feb. 23, 1966.

Earl J. Wahl, County Atty., Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, by Barnett I. Shur, C. Daniel Ward, Kenneth Laurence, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

On appeal. The respondent was found guilty of sodomy by a jury at the September

1964 Term of the Cumberland County Superior Court. He appeals from the denial of a motion for new trial on the grounds the verdict is against the law and the charge, against the weight of the evidence, manifestly against the weight of the evidence, and on the further ground of prejudice from an allegedly false report in the public press and other news media with respect to a person mentioned in the course of respondent's testimony.

At the trial the respondent was represented by court-appointed counsel. So far as the record indicates, however, he prepared and argued his motion for new trial without assistance of counsel. Presently he is represented by court-appointed counsel who entered the case after the appeal was taken.

"The issue raised on the appeal is whether in view of all the evidence, the jury was justified in believing beyond a reasonable doubt that the respondent was guilty." State v. Dipietrantonio, 152 Me. 41, 54, 122 A.2d 414; State v. Viles, 161 Me. 28, 206 A.2d 539.

The additional point relating to prejudice is also raised by the appeal.

■ We may also set aside a verdict on appeal, although no exceptions were taken under the principle stated in State v. Wright, 128 Me. 404, at p. 406, 148 A. 141, 142, in which the Court said:

"In civil cases, however, an exception to this general rule has been recognized, and where, and only where, manifest error in law has occurred in the trial of cases and injustice would otherwise inevitably result, the law of the case may be examined upon a motion for a new trial on the ground that the verdict is against the law, and the verdict, if clearly wrong, set aside."

See also State v. Rand, 156 Me. 81, 83, 161 A.2d 852.

The case is before us solely upon the appeal. No exceptions were taken to the evidence, charge, or any rulings at the trial. The rules in force prior to the effective operation of the new Rules of Criminal Procedure govern.

We reach the decisive issues, as will be seen, by application of the principle stated in State v. Wright, supra. Justice requires that we travel outside of the strict bounds of the appeal.

The testimony may be summarized as follows:

One Cooper, the prosecuting witness, testified that he met the respondent and one Kunz on a street in Portland about midnight on a night in July 1964; that the three walked to an automobile in a driveway adjacent to the respondent's home; that Kunz, intoxicated, sat on the rear seat, and the complainant and respondent on the front seat; that the respondent forcibly compelled him to submit to sodomy with penetration per anum; that Kunz left the car; that he Cooper asked for a drink of water, went with the respondent into the house, was dragged to the respondent's bedroom and was again compelled forcibly to submit to a second like act of sodomy; that he stayed in the bedroom with the respondent until six o'clock in the morning; that the respondent would not let him leave during the night, and that he then complained to the police. He denied that he was a homosexual and that he had requested $10 to perform the indecent acts charged.

Kunz testified that he was in the rear of the car, as both Cooper and respondent agreed; that he was not intoxicated, and that no acts of sodomy occurred in the car while he was there.

The respondent in substance with so unimportant differences in time agreed that he was with Cooper in the car and in his bedroom during the night. He stated that he was a homosexual; that in the bedroom

he expected "to have some sort of sex"; that Cooper said, "when I do something like this, I usually get paid for it"; that he refused to make any payment and did not touch Cooper. He denied directly committing the acts charged against him.

Cooper also told the jury that at the "bind over" hearing in municipal court the respondent gave substantially the same story relating to payment. At the trial a city police officer testified that at the police station after hearing Cooper's story, the respondent said in substance that Cooper had demanded payment for services rendered.

We first reach the respondent's attack upon the constitutionality of the statute and the sufficiency of the indictment. Unless the statute and the indictment support a conviction, it would be pointless to consider the other claims of error. State of Maine v. Hume, 145 Me. 5, 6, 70 A.2d 543.

"Whoever commits the crime against nature, with mankind or with a beast, shall be punished by imprisonment for not less than 1 year nor more than 10 years." R.S.1954, c. 134, § 3 (now 17 M.R.S.A. § 1001).[1]

In Jaquith v. Commonwealth, 331 Mass. 439, 120 N.E.2d 189, the court upheld a statute reading: "[w]hoever commits any unnatural and lascivious act with another person" against an attack upon the constitutionality of the statute. The principles were well stated at p. 191 of 120 N.E.2d:

"We are of opinion that the terms of this statute are not violative of the requirements of the constitutional provisions relied upon. We agree that a statute prescribing certain conduct must be sufficiently definite in specifying the conduct which is inhibited so that a reasonable man may not be compelled to speculate at his peril whether a statute permits or prohibits the act he proposes to undertake. If the language of a statute is so variable, vague, or uncertain that it does not plainly set out a crime, then the statute is a nullity."

\*   \*   \*   \*   \*   \*

"However, a statute does not fail to satisfy constitutional requirements merely because it uses general terms when such terms so define the offence as to convey to a person of ordinary understanding and intelligence an adequate description of the prohibited act."

■ Our statute sufficiently describes the offense. There is no violation of due process in conviction of the crime of sodomy thereunder.

So far as we are aware the constitutionality of the statute has never before been challenged. For nearly a century and a half no one before the respondent has contended that the statute should more specifically set forth details of the crime charged. Reason and history are both against the respondent on this issue.

Likewise, we find no merit in the argument that the indictment is unnecessarily vague and uncertain and unspecific. In State v. Langelier, 136 Me. 320 at p. 321, 8 A.2d 897, our Court stated the rule:

"It has frequently been held that it is sufficient merely to charge the accused with the commission of the crime of 'sodomy', or of 'the crime against nature', the crime being too well known and too disgusting to require other definition or further details or descrip-

The statute has remained unchanged from R.S.1857, c. 160, § 3.

[1] "That if any man shall commit the crime against nature with a man or male child \* \* \*." Laws 1821, c. 5.

In R.S.1841, c. 160, § 4, the statute read as at present except for the word "detestable" before "crime".

tion. Wharton's Crim.Pro., 10th ed., V. 2, Secs. 1234 and 1243; 8 R.C.L. 335."

See also State v. Pratt, 151 Me. 236, 116 A.2d 924.

The indictment is in the form found in Whitehouse and Hill p. 178. It has been tested in our Court in the cases cited. To say that the respondent did not know from the indictment of the offense with what he was charged is to deny him ordinary intelligence. We are convinced that he could not have suffered harm in the preparation of his defense. Cf. State v. Farnham, 119 Me. 541, 544, 112 A. 258.

■ We are fully satisfied that the indictment meets the constitutional right to demand the nature and cause of the accusation. Maine Constitution Art. I, §§ 6, 6–A; Federal Constitution, 14th Amendment.

The indictment reads in part: "the detestable and abominable crime of sodomy." The respondent complains that the words "detestable" and "abominable" inflamed the jurors and prejudiced the respondent. The respondent gives too little weight to the intelligence of the jurors. We have no doubt that citizens generally consider sodomy "detestable" and "abominable." It is a dirty business. The words in question, although not necessary, do not destroy the indictment.

Lastly, the respondent argues that sodomy may not be held a crime under our constitutional provisions protecting the privacy of individuals. It is sufficient to say that sodomy has been a crime over the centuries. We are not unaware of studies relating to the nature of the offense. See for example American Law Institute Model Penal Code Draft 1962, § 213.2, and Perkins v. State of North Carolina, D.C., 234 F. Supp. 333.

We conclude therefore that the statute is constitutional and the indictment is sufficient.

■ We turn to the trial. The respondent contends that certain inquiries by the State to establish his criminal record were highly prejudicial and that for this reason his appeal should be sustained. The statute reads:

*"Prior Conviction as affecting credibility.* No person is incompetent to testify in any court or legal proceeding in consequence of having been convicted of an offense; but conviction of a felony, any larceny or any other crime involving moral turpitude may be shown to affect his credibility." R.S.1954, c. 113, § 127 (now 16 M.R.S. A. § 56.)

On cross-examination of the respondent after eliciting his admissions of prior convictions for breaking, entering and larceny and aggravated assault, the prosecutor continued in his effort to destroy respondent's credibility as follows:

"Q And are you the same John Joseph White that was convicted of sodomy, or being a moral degenerate in the city. * * *

"A I was never convicted of sodomy.

"Q You were not convicted of being a moral degenerate. * * *

"A No, I wasn't convicted of being a moral degenerate. Take a look at that, please.

"Q What does 'DC8' mean?

"A I don't know. Disorderly conduct.

"Q Were you convicted of that?

"A Of disorderly conduct, yes."

The limitation to "felony, any larceny or any other crime involving moral turpitude," added to the statute in P.L.1947, c. 265, was

first considered in State v. Jenness, 143 Me. 380, 62 A.2d 867. The Court held that illegal sale and possession for illegal sale of intoxicating liquor did not involve crimes of moral turpitude and that the admission of questions to establish such convictions was error. We said, "the jury may have been improperly influenced by its admission, * * *." In State v. Hume, 145 Me. 5, 70 A.2d 543, a witness whose testimony if believed would have given the respondent a complete alibi, was asked "whether she had been 'convicted of a criminal offense' ". In discussing the statute as amended in 1947 the Court continued:

"This precludes the possibility of impeaching witnesses for earlier convictions of crime except those described by the quoted language. An affirmative answer to any question of the general type in issue produces the very damage the statute was designed to prevent. The protection of a witness' credibility from attack it was intended to furnish would be destroyed by evidence of a conviction which might or might not be of any of the designated types. It would be impossible to frame a question more manifestly contrary to the intention and purpose of the statute than the one here presented. The ruling was erroneous and the exception to it must be sustained."

The statute was again before us in State v. Trask, 155 Me. 24, 151 A.2d 280, in which exceptions to the denial of a motion for mistrial were overruled. The prosecutor inquired if the respondent was the same person convicted of a stated larceny. An objection was made and the question was not pressed. It appeared that if the respondent was truthful as to his age, as given in his testimony, he could not lawfully have been convicted of the larceny. The Court said, at p. 29, 151 A.2d at p. 283:

"The prosecutor, however, possessed a certified copy of what purported to be an official record of a conviction of larceny of one Daniel Atwood Trask

in the Superior Court in 1954. We cannot say that it was reprehensible for the prosecutor to have acted as he did. He had an onerous duty to discharge. Because of the appearance of the respondent the prosecutor may have been skeptical as to his age. For whatever consideration the circumstance may command here, there is no reason to ascribe any illicit motive to the State's attorney.

"The question was not answered. The ostensible record was neither offered nor admitted. The presiding Justice promptly warned the jury to 'disregard any reference to records of conviction' and denied a motion for mistrial based upon the incident."

The Court did not find that any manifest wrong or injury resulted to the respondent from the refusal to grant the mistrial.

It is to be noted that in *Trask* the prosecutor had sound reason to base his inquiry on the information he possessed. There was no reason for him in light of the official record to make inquiry about age of the respondent to determine whether the record of conviction was proper.

In the instant case the prosecutor addressed his inquiries to the respondent in utter ignorance of what crime the respondent had been convicted in some unidentified city. Was it sodomy, or "of being a moral degenerate," or "DC8"? Only with the aid of the respondent did the State learn that "DC8" might stand for "disorderly conduct", an offense not otherwise defined.

If the prosecutor in his cross-examination to credibility had known that the respondent had never been convicted of sodomy or of "being a moral degenerate", (if such a crime is recognized in any jurisdiction) his conduct would have been reprehensible. But such we are fully satisfied is not the situation before us. The inquiries were put by the prosecutor not by wrongful design but without sufficient basis in fact.

The prejudice to the respondent, however, remains as great as if the prosecutor had wilfully and wrongfully brought the question of a conviction of sodomy or of "being a moral degenerate" before the jury. Moreover there is no suggestion that "DC8", even if properly identified as "disorderly conduct", is an offense which is either "a felony, any larceny or any other crime involving moral turpitude" as required by the statute. We are nowhere informed by any official or authoritative source as to what exact offense was intended to be embraced by the abbreviated "DC8". "Disorderly conduct" is an offense created by statute or ordinance and was not known to the common law. 27 C.J.S. Disorderly Conduct § 1 et seq. and 12 Am. Jur.2d., Breach of Peace and Disorderly Conduct § 28, et seq. Unless "DC8" has some special significance not apparent of record, we cannot assume that it would involve moral turpitude. The instructions to the jury were in general terms and contained no admonition to disregard the reference to sodomy or "being a moral degenerate", nor did they direct the jury that the respondent's admission that he had somewhere been convicted of "DC8" or "disorderly conduct" could not be considered by them as affecting his credibility. The jury were left to speculate as to the nature and extent of the respondent's criminal record on the issue of his credibility.

It is argued that inasmuch as the respondent admitted he was a homosexual, the inquiry was not harmful. The respondent we must remember was not on trial for being a homosexual, but to answer to an indictment charging specified acts of sodomy with Cooper. Such acts are acts of darkness, and guilt will often rest upon the credibility of the person charged. In no other type of case is it of more importance that the purpose and intent of the statute on credibility be completely and fairly met by the State.

We are satisfied that the rights of the respondent may have been prejudiced by the questions asked by the prosecutor. State v. Hume, supra. In our opinion the trial should have been halted. We may assume that the respondent would not have objected to a mis-trial as he now raises the point on appeal. Under the principle of State v. Wright, supra, the issue is properly before us. Justice requires that we allow the appeal and grant to the respondent a new trial on this ground.

The respondent raises several other issues in his appeal. At a second trial such issues may or may not arise and need not be now considered. State v. Hume, supra.

The entry will be

Appeal sustained.