**STATE of Maine**

**v.**

**Joseph R. MacDONALD.**

Supreme Judicial Court of Maine.

April 28, 1967.

Richard J. Dubord, Atty. Gen., Leon V. Walker, Jr., and Peter T. Dawson, Asst. Attys. Gen., Augusta, Lloyd P. LaFountain, County Atty., and Ralph H. Ross, Asst. County Atty., Alfred, for plaintiff.

William P. Donahue, Biddeford, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

WEBBER, Justice.

At the conclusion of a protracted trial commencing on October 19, 1964 and ending on November 6, 1964, the respondent was found guilty of murder. A motion for new trial based on the usual grounds and including the assertion that the verdict was "against the law" was seasonably filed with the justice presiding and was by him promptly denied. It is not shown by the record before us that any appeal was taken to the denial of the motion. We are now asked to review a number of alleged errors of law said to have occurred during the trial, all of which would normally and properly be raised by exceptions. No bill of exceptions was filed or allowed. The appellate procedure was governed by the law as it existed prior to the adoption of the Maine Rules of Criminal Procedure, effective December 1, 1965. R.S.1954, Ch. 106, Sec. 14 as amended; R.S.1954, Ch. 148, Sec. 30. The charge was murder. The respondent was indigent and represented by counsel appointed by the court. There was a very brief period after verdict when respondent was without counsel. On November 9, 1964, upon respondent's motion, counsel was ap-

pointed to represent him on his "appeal to the Law Court." Thereafter the State, the respondent and the presiding justice dealt with the case as though an appeal had been taken. We therefore treat the matter as though an appeal had in fact been seasonably filed. As to matters ordinarily brought forward by bill of exceptions we apply the doctrine announced in State v. Wright (1929), 128 Me. 404, 148 A. 141 and followed in State v. Morin (1953), 149 Me. 279, 100 A.2d 657; State v. Rand (1960), 156 Me. 81, 161 A.2d 852; State v. Hathaway (1965), 161 Me. 255, 211 A.2d 558 and State v. White (Me.1966), 217 A.2d 212. We have accordingly carefully reviewed the record to ascertain (1) whether or not upon all the evidence a jury was warranted in finding the respondent guilty beyond a reasonable doubt, and (2) whether or not there were "manifest errors of law" in the trial of the case and "injustice would inevitably result, unless the verdict were set aside." State v. Wright (supra).

## CHANGE OF VENUE

■ At the outset the respondent moved for a change of venue, asserting that pretrial publicity was of such a nature as to render it impossible for him to obtain a fair and impartial trial in York County. This motion was denied. At the time of the murder of which MacDonald has been convicted, he was engaged in a bank robbery in South Berwick in concert with one Wayne Beckus. Though separately indicted and separately tried and convicted of the same murder, Beckus has upon his appeal raised the same issue with respect to venue based upon the same publicity. The reasons which prompted us to rule against Beckus upon this issue have equal application here. They are fully set forth in our opinion in State v. Beckus, 229 A.2d 316, filed simultaneously herewith and no useful purpose would be served by repeating them in this opinion. Suffice it to say that we find no abuse of the discretion of the presiding justice in denying respondent's motion for a change of venue.

## MISTRIAL

■ After nine jurors had been accepted, it came to the attention of the presiding justice that one of these jurors had at some time in the past and in another state been the victim of a robbery or attempted robbery. All nine jurors were then carefully and privately examined by the court and counsel with the respondent present. The court then excused two of the jurors from further service and the respondent moved for a mistrial, which motion was denied. Although as already noted we are not aided by a bill of exceptions which would clearly state just how the respondent claims to have been aggrieved, we glean some understanding of his contention from the record and his brief. It appears that respondent voiced no objection to the removal of the two jurors from the panel. In fact we infer from the record that he approved of this action and would have objected to a contrary result. His theory seems rather to be that he had based his use of peremptory challenges on the assumption that nine jurors had been found acceptable, and that it became impossible for him to proceed to complete the panel with the peremptory challenges then remaining without suffering some prejudice. Although the two excused jurors were not shown to be biased or prejudiced or otherwise disqualified for cause, it is apparent that the presiding justice discharged them as for cause out of an excess of caution and in an effort to resolve every possible doubt in favor of the respondent. Moreover, he provided the respondent with two additional peremptory challenges over and above the number allotted by statute. The use of peremptory challenges by a respondent can never properly be based on any assumption that a juror who has been accepted may not later be excused for cause shown at any time before trial is begun. The "trial" does not begin until the jury has been impanelled and sworn. State v. Slorah (1919), 118 Me. 203, 208, 106 A. 768, 4 A.L.R. 1256. The respondent cites no case in support of his novel and ingenious theory and none has been called to our attention.

The fundamental rule is that continuances and mistrials are within the sound discretion of the presiding justice. We look only to see if the action taken is in furtherance of justice. State v. Wardwell (1962), 158 Me. 307, 183 A.2d 896; State v. Hume (1951), 146 Me. 129, 78 A.2d 496. No abuse of discretion having been shown, the denial of the motion was clearly not a "manifest error of law."

## VIEW

In accordance with usual practice, the jury after careful instruction and under proper safeguards was permitted to take a view of the locus of the crime. R.S.1954, Ch. 148, Sec. 17 (now 15 M.R.S.A. Sec. 1260) provided that "The court may order a view by any jury in a criminal case." The respondent now suggests that this statute "is in violation of both the Federal and State Constitutional safeguard." The respondent offers no authority supporting such a startling legal conclusion and we are satisfied that none exists. It has long been universally recognized that a view may in appropriate circumstances aid a jury in understanding the evidence. The respondent has a right to be present and was so in this case. The jury was carefully instructed before the view was taken. In our view this contention of the respondent is devoid of merit and may be dismissed without further comment.

## EXTRA-JUDICIAL STATEMENTS

There was admitted over objection evidence of oral statements made by the respondent to the police during an interrogation conducted shortly after his apprehension and arrest. The ground of the objection is not of record and again we are not aided by a concise statement of the basis of alleged grievance such as would be found in a bill of exceptions. The respondent was first "advised of his rights" by the officer. He was informed that he was under arrest and charged with armed robbery and murder. He was offered the use of a telephone to call "anyone he desired to" and was specifically asked if he wanted to "call (his) brother or an attorney." He was informed that "you don't have to talk to us" and that "if you don't wish to talk to us, we will leave the room." The respondent replied that he had no desire to use the telephone or to call anyone, that he was "not guilty of anything" and that he "wanted to know what this was all about." During an interrogation which lasted for several hours except as interrupted for a "lineup" in which respondent voluntarily participated and for the consumption of a meal, the respondent never deviated from his initial protestation of innocence and never admitted guilt or any knowledge of the events which transpired in South Berwick or elsewhere connected with or constituting the crime. In response to questions he gave an account of his activities before and during the time the crime was committed, his version being of course in the nature of an alibi. He indicated that he had been given a ride to Somersworth by a "friend" but declined to disclose the name of this "friend", saying that he would produce him "when the time comes, when the right time comes." The respondent had been hiding in the woods in Somersworth when apprehended by the police. His explanation for his flight and concealment was that while mingling with the crowd which had gathered in Somersworth he overheard someone say that "a bank teller has been shot." He then added, "I don't know why, but I panic (sic) and ran for the wood." When later in the course of the interrogation the respondent "asked to call his brother and an attorney", he was immediately afforded an opportunity to do so and such a call was made.

With respect to the test of voluntariness, we have had occasion in the past only to apply the test to confessions. In the case of Michaud v. State (1965) 161 Me. 517, 530, 215 A.2d 87, however, we indicated that we would apply the same test to admissions which were "significantly

incriminating". In Michaud we reviewed what seemed to us the landmark cases of the United States Supreme Court bearing on custodial interrogation, but we found and now on re-examination of those cases find no suggestion that the constitutional safeguards there defined would be applied where the statements given were either exculpatory or not "significantly incriminating". We are satisfied that if the rule announced in Escobedo v. State of Illinois (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (involving a confession) can be thought to have any application here, that rule was satisfied when the interrogating officer at the outset offered the respondent an opportunity to call a relative *or an attorney* and when later, such a request being made, it was forthwith granted. In our view the extra-judicial statements in the instant case were primarily exculpatory and in any event not "significantly incriminating", and even if not so regarded were given under circumstances satisfying all traditional requirements of voluntariness as the law was defined and understood at the time of trial.

We recognize that in the recent opinion of Miranda v. State of Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 1629, 16 L. Ed. 2d 694, the court said by way of dictum, "The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. *Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory'."* (Emphasis ours.) The Miranda opinion in fact decided four cases, one involving an oral and a written confession (Miranda v. State of Arizona), one involving an oral confession only (Vignera v. State of New York), one involving written confessions (Westover v. United States) and a fourth involving an oral confession (State of California v. Stewart). The Supreme Court has not as yet had occasion to deal with a case involving purely exculpatory state-

ments, and in Miranda expresses doubt whether such a case will ever arise. But even if the dictum in Miranda were to be given the force of a holding, it would not affect the result in the instant case. In Johnson v. State of New Jersey (1966), 384 U.S. 719, 86 S.Ct. 1772, 1775, 16 L.Ed. 2d 882, the Court declared, "We hold further that Miranda applies only to cases in which the trial began after the date of our decision one week ago." Johnson was decided June 20, 1966 and the trial in the instant case began in October, 1964. It follows also, of course, that insofar as Miranda imposed new and additional requirements with respect to a constitutionally proper custodial interrogation, these requirements have no application in the instant case. As already indicated, and for the several reasons above noted, we view the evidence in the instant case as properly admissible under the law aᵉ it existed and was understood prior to Miranda. Upon careful analysis, the statements elicited from the respondent, being exculpatory in nature, were more favorable to the defense than to the prosecution. The respondent elected not to testify in his own behalf. In the face of overwhelming and conclusive evidence of guilt, the statements stood as the only testimony in the case favorable to the respondent. His account of his activities on the morning of the crime, although uncorroborated, were not inherently incredible and would have exonerated him from any guilty participation if believed by the jury. The evidence adduced by the State with the reasonable inference flowing therefrom tended to prove that while fleeing from the scene of the crime in an automobile, he was overtaken and hotly pursued by an officer; that he abandoned his car near a river bank and waded across the stream; that his outergarments and the murder weapon were found abandoned near the spot where he emerged from the water; and that he himself was subsequently found hiding in the woods, his trouser legs, his shoes and his socks still wet from his encounter with the river. The inferences of guilt logically to be drawn from his flight

and concealment as observed by witnesses were in nowise aided or strengthened by respondent's statement to the police which, if believed, would have furnished an explanation of concealment consistent with innocence. The conviction of the respondent rested not upon any statements which he made to police officers but upon his own course of conduct as observed and described by numerous witnesses and as evidenced by an unbroken chain of circumstantial evidence. Not only does the respondent fail to show any "manifest error of law" but upon this record "injustice would inevitably result" *if* the verdict were set aside.

### APPEAL

■ Leaving matters of alleged legal error ordinarily and more properly raised by bill of exceptions, we turn to the usual considerations before us on an appeal from the denial of a motion for new trial. The issue here is whether or not upon all the evidence the jury was warranted in finding the respondent guilty of murder beyond a reasonable doubt. A jury could properly find that the respondent and his accomplice Beckus, wearing handkerchiefs over their faces and dark glasses to conceal their identity, entered a bank in South Berwick during business hours; that the respondent held the tellers and customers at gun point while Beckus took the available money; that the respondent fired one shot inside the bank into a ceiling light as a warning to his victims; and that while attempting escape and on the sidewalk at the bank entrance the respondent shot and killed a police officer advancing to apprehend him. This homicide committed during an act of robbery constituted murder. See State v. Rainey (1953), 149 Me. 92, 99 A.2d 78. The respondent was positively identified by several witnesses who relied upon their recognition of respondent's voice and certain physical characteristics. Identification was made both at a "lineup" which the presiding justice properly ruled was conducted fairly and at the trial itself. On

this record identification became a question of fact properly for the jury. The State effectively established a chain of circumstantial evidence linking the automobile driven by the respondent and the murder weapon to the respondent and his accomplice. We have already alluded to the pursuit and search for the respondent and the circumstances under which he was subsequently apprehended. A reading of the record leaves no doubt whatever of the guilt of the respondent and the motion for new trial was properly denied.

The entry will be

Appeal denied.

Judgment for the State.