STATE of Maine

v.

Forrest Anthony ROWE.

Supreme Judicial Court of Maine.

Feb. 20, 1968.

William H. Clifford, Jr., County Atty., Charles H. Abbott, Asst. County Atty., Auburn, for appellant.

Berman, Berman & Berman, by Jack H. Simmons, Lewiston, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DU-FRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

Forrest Anthony Rowe, appellant, at the June 1967 session of the Grand Jury for the County of Androscoggin, was indicted for violation of 17 M.R.S.A. § 2107, the indictment charging him with the embezzlement of money in the amount of one hundred twenty-five ($125.00) dollars belonging to his employer, one Willie Blanchette, doing business as Bill's Sunoco Station situated at the intersection of East Avenue and Sabattus Street in the City of Lewiston. The time of the offense is stated to be March 5, 1967. At trial, after the State had offered strong proof of his guilt, appellant was the only witness in his own defense intimating that another named person was the perpetrator of the crime involving the missing funds. He was convicted and now appeals.

Our embezzlement statute upon which appellant's conviction is founded reads in pertinent part as follows:

"§ 2107. Embezzlement or fraudulent conversion; receiver liable. If an officer, agent, clerk or servant of a person, copartnership or corporation, except an apprentice or a person not having attained his 16th birthday, embezzles or fraudulently converts to his own use, or takes and secretes with intent to do so, without the consent of his employer or master, any property of another in his possession or under his care, by virtue of his employment; * * * he is guilty of larceny and shall be punished accordingly. * * *"

Motion for new trial or in the alternative for a judgment of acquittal.

At the close of the State's case, the appellant moved for judgment of acquittal on the grounds that there was insufficient proof at that stage of the trial to sustain a conviction. *Maine Rules of Criminal Procedure*, Rule 29. After denial of his motion, appellant took the stand and offered evidence in defense. Under the corresponding federal rule, the introduction of testimony for the defense constitutes a waiver and an abandonment of that motion. Colella v. United States, C.A.1st, 1966, 360 F.2d 792, 802, cert. den. 87 S.Ct. 65, 385 U.S. 829, 17 L.Ed.2d 65; United States v. Manos, C.A.3d, 1965, 340 F.2d 534; Mosca v. United States, C.A.9th, 1949, 174 F.2d 448, 451. Similarly, under the practice existing before the adoption of the Maine Rules of Criminal Procedure, an exception to the denial of a motion for a directed verdict made at the end of the State's case was waived on introduction of evidence by the respondent. State v. Rand, 1960, 156 Me. 81, 86, 161 A.2d 852, 855; State v. Johnson, 1950, 145 Me. 30, 34, 71 A.2d 316, 318. The accused lost nothing, however, under the previous rules, by not renewing his motion for directed verdict at the close of all the evidence, if he appealed from the court's denial to set the verdict aside and grant a new trial, because both the motion and the appeal accomplished precisely the same result. State v. Rand, supra; State v. McKrackern, 1945, 141 Me. 194, 197, 41 A.2d 817, 818; State v. Smith, 1944, 140 Me. 255, 283, 37 A.2d 246, 258. Our present motion for acquittal under Criminal Rule 29(a) M.R.Cr.P. supplants the former motion for directed verdict.

The new criminal rules effective since December 1, 1965 have not abrogated the accused's right to test the sufficiency of the evidence to support a verdict of guilty, but by rule 29(b) these rights have been extended to permit the motion for acquittal if made at the close of all the evidence to be renewed after verdict of guilty, or if not so interposed, to be made for the first time after such verdict. In the instant case, the record reveals that the defendant did not move for acquittal after the close of all the evidence, but did simultaneously with his notice of appeal file his motion for new trial or in the alternative for judgment of acquittal. Nowhere in the record however does it appear that the court acted on the dual purpose motion for new trial or acquittal.

 The foundation must be laid in the trial court for appellate review of the claim of insufficiency of the evidence to support the verdict. Under the old rules, there had to be a bill of exception based upon the denial by the presiding justice of a motion by the accused for a directed verdict or an appeal predicated upon the denial of his motion for new trial. State of Maine v. Bey, 1965, 161 Me. 23 at 25, 206 A.2d 413, 415. The new rules did not dispense with these prerequisites. Indeed, Rule 37(a), M.R.Cr.P., provides that "The defendant may appeal from the judgment by filing a notice of appeal with the clerk. An appeal from a judgment preserves for review *any claim of error in the record including any claim of error in the denial of a motion for a new trial, the denial of a motion for judgment of acquittal, or the denial of a motion in arrest of judgment.*" (Emphasis supplied). In the instant case, there was no denial by the presiding justice of defendant's motion for new trial or for acquittal; henceforth there was no preservation for review of the issue of the sufficiency of the evidence to support the verdict and in this posture of the case that question would not normally and properly be for appellate consideration.

The appellant however in the court below was represented by court-appointed counsel who has carried the appeal to this Court. After the filing of his notice of appeal, the appellant, the State and the presiding Justice have dealt with the case as though the stated motions had been denied and the issue of the sufficiency of the evidence had been properly preserved for appeal. Being mindful that justice may require that we notice on appeal plain error affecting sub-

stantially the rights of an accused under the principle stated in State v. Wright, 1929, 128 Me. 404, 148 A. 141, we have chosen to and have responsibly reviewed and considered the issue of the sufficiency of the evidence, notwithstanding the procedural lapse which ordinarily would have foreclosed the appellant from appellate consideration. See, State v. MacDonald, Me., 1967, 229 A.2d 321; State v. White, Me., 1966, 217 A.2d 212.

The points of appeal in reference to the sufficiency of the evidence are as follows:

(Specifically) "The State failed to prove, beyond a reasonable doubt, all of the elements of the crime as defined by statute; in that

(a) the State failed to prove that the respondent was over sixteen (16) years of age;

(b) the State failed to prove that the respondent was not an apprentice;

(c) the State failed to prove that more than $100 was stolen;

(d) the State failed to prove an intention of fraudulent conversion;"

(Generally) "The evidence was not sufficient to explain, beyond a reasonable doubt, every other reasonable hypothesis except that of the respondent's guilt", and "the State failed to prove, beyond a reasonable doubt every circumstance upon which a conviction could rest."

Proof that appellant at time of alleged embezzlement was over 16 years of age and not an apprentice.

The State concedes that there is no testimonial averment in the evidence to the effect that the appellant had attained his 16th birthday or was not an apprentice at the time when the embezzlement took place. When the Legislature declared what kind of embezzlement or fraudulent conversion shall be deemed larceny in an officer, agent, clerk or servant of a person, copartnership or corporation, 17 M.R.S.A. § 2107,

it excepted from the reach of the statute apprentices and persons less than sixteen years of age. The law of embezzlement is statutory. It sprang from attempts to reach situations not covered by the law of larceny and is a sort of statutory larceny and what persons may be guilty thereof depends entirely as to whether they come within the class of persons described in the statute either expressly or by necessary implication. 2 Bishop on Criminal Law, §§ 318 and 325; State v. Cates, 1904, 99 Me. 68, 58 A. 238; State v. Snow, 1934, 132 Me. 321, 323, 170 A. 62. Embezzlement is larceny committed by a certain class of persons, without a trespass. State v. Thomes, 1927, 126 Me. 230, 137 A. 396.

The instant indictment stated that the accused was not an apprentice and that he had attained his sixteenth birthday. Thus the statutory exception contained in the enactment clause of the statute was properly negatived as may have appeared necessary under our previous criminal practice. State v. Walton, 1873, 62 Me. 106, 109. See also State v. Keen, 1852, 34 Me. 500; State v. Gurney, 1853, 37 Me. 149; State v. Webber, 1926, 125 Me. 319, 322, 133 A. 738, 741.

But as indicated by Form 9 of the Appendix of Forms, Glassman, Maine Practice, pages 453, 454, indictments under 17 M.R.S.A. § 2107 need not negative the statutory exceptions of apprentices and persons under sixteen years of age. Rule 58 M.R.Cr.P. ordains such practice as legally sufficient. This is in recognition of the fact that the age of the accused and his status as a non-apprentice are not in legislative contemplation ingredients of the statutory offense.

In Williams v. United States, 78 App. D.C. 147, 138 F.2d 81, 82, 153 A.L.R. 1213, the Court ruled that

"In determining whether the exception is in fact a part of the description of the offense we must consider first whether the act in itself, without the exception, is ordinarily dangerous to so-

ciety or involves moral turpitude. If so, it does not seem unjust to compel the defendants to offer evidence to justify their conduct * * *. Therefore, in a situation where the facts relating to the exception are difficult for the State to obtain and are at the same time peculiarly within the knowledge of the defendants, the exception is usually considered as a defense or justification and not as part of the description of the offense itself." See footnote (6) appended to the Williams case.

. The statute in the instant case creates the general offense of embezzlement by any officer, agent, clerk or servant who fraudulently converts to his own use, or takes and secretes with intent to do so, any property of another in his possession or under his care by virtue of his employment, and the exception merely withdraws from the general class of otherwise would-be embezzlers those persons answering such descriptions but who are either apprentices or under the age of sixteen years. Such formal abbreviation in accusations of embezzlement is consistent with the purposes of Rule 7(c) of M.R.Cr.P. to simplify criminal pleadings.

■ The burden of proof, however, respecting the statutory exceptions has always been on the accused who must establish by exculpatory proof that he comes within the exclusion. Hinckley v. Inhabitants of Penobscot, 1856, 42 Me. 89; State v. Crowell, 1845, 25 Me. 171; State v. Whittier, 1842, 21 Me. 341. This is only fair as both exceptions concern factual matters which lie peculiarly within the knowledge of the accused. See, Glassman, Maine Practice, Commentary § 7.9; 22A C.J.S. Criminal Law §§ 571, 572; 1 Wharton's Criminal Evidence (12th ed.) § 20; 1 Underhill's Criminal Evidence (5th ed.) § 53; Annotation, 153 A.L.R. 1249; Terrell v. State, 1962, 210 Tenn. 632, 361 S.W.2d 489; State v. Casper, 1958, 106 Ohio App. 176, 154 N.E.2d 9; Krusoczky v. State, 1923, 108 Ohio St. 430, 140 N.E.

614; State v. O'Dell, 1918, 187 Ind. 84, 118 N.E. 529; State v. Brown, 1963, R.I., 196 A.2d 138.

■ Notwithstanding the absence of specific testimony respecting the appellant's age at the time of the embezzlement, that issue was properly before the jury by reason of the jury's view of the appellant in the courtroom at his trial and in this case as a witness in his defense; we cannot say that the jury erred in deciding that issue against him. Jurors are at liberty to use their senses of observation and draw inferences as to the age of an accused or witness from his physical appearance, and such will fill the evidentiary void otherwise present where no verbal or written testimony of age is introduced into the evidence. State v. Dorathy, 1934, 132 Me. 291, 170 A. 506.

■ The only evidence in the case concerning the relationship between the appellant and the owner of the filling station, the alleged victim of the embezzlement, is that of employer and employee. The owner testified that he hired Mr. Rowe whose duties of employment appear to have been those of an ordinary filling-station attendant, generally to sell and dispense gas, oil and automotive equipment to the motoring public. The evidence reveals that the employment contract provided for Rowe to be paid $75 per week based on 54 hours of work, plus overtime pay for Sunday employment at $1.25 per hour. Such evidence standing alone foreclosed any possible claim that the contract of hiring was anything but the ordinary common-place agreement of employment. It excluded the existence of any special apprenticeship contract the primary purpose of which would be to give and receive instruction and training in a profession, trade or employment, whether at common law or under statute. The jury was duly warranted in finding from the evidence that the appellant was not an apprentice.

Proof that more than $100 was embezzled and that appellant had a fraudulent in-

tent to convert the money to his own use.

The appellant complains that the evidence does not satisfy the standard of proof beyond a reasonable doubt as required in criminal trials, first, that the amount of money embezzled exceeded one hundred dollars, the value required to justify a sentence to state prison, or secondly, that he harbored a fraudulent intent to steal at the time of the taking. Appellant seems to base this attack on the fact that his employer would have owed him on Monday, the day following the embezzlement, about ninety dollars in wages, and that since the indictment charged the embezzlement of only $125, the net amount which might be considered as proven would not exceed $100. He also argues that his right to the $90 in wages due him by his employer necessarily precludes a finding of fraudulent intent by the jury. With such contentions we disagree. Indeed, the evidence reveals that an advance of $22 made to Rowe the previous week was deductible from the top of his next pay, so that the most he could expect the following Monday in wages would be about $68. The evidence further supports a total embezzlement of more than $125 in cash. The extent of money taken was a factual consideration for the jury's determination. So was the accused's specific intent of fraudulently converting the same to his own use. Where specific intent is an element of the offense, it must be proved as a fact with the same certainty as any other element; 22 C.J.S. Criminal Law § 32; State of Maine v. Wagner, 1945, 141 Me. 403, 406, 44 A.2d 821; State of Maine v. Quigley, 135 Me. 435, 442, 199 A. 269; and it is the constitutional right of the accused to have such issue of intent submitted to the jury for resolution and decision. State of Maine v. Greenlaw et al., 159 Me. 141, 149, 189 A.2d 370. It is the province of the jury to determine controverted issues of fact. State of Maine v. Sprague, 1938, 135 Me. 470, 473, 199 A. 705. Whether or not the appellant was acting in good faith under an honest and well-founded belief that he had

the right to take moneys of his employer before pay-day for the purpose of paying himself wages earned up to the time of taking and thus had no intention to convert was an issue for the jury's consideration and decision. State v. Morin, 1932, 131 Me. 349, 352, 163 A. 102.

The indictment charged the appellant with the embezzlement of the sum of $125 which, although not stated therein, corresponds with the amount of cash concededly entrusted to Rowe to make change in the course of his attending the station. In the light of Rowe's immediate flight to California, which could be considered as evidence of guilt when viewed with other incriminating evidence present in the instant case, State v. Scott, 1921, 120 Me. 310, 114 A. 159, we cannot say that the jury erred in finding beyond a reasonable doubt that the appellant did, as was charged against him, without the consent of his employer and with intent to permanently deprive him of his property, embezzle and fraudulently convert the sum of $125 which he had in his possession and care by virtue of his employment. Rowe's testimony in conflict with the State's evidence or tending to throw the finger of suspicion upon his named friend was evidence for the jury's evaluation, the same as any other evidence. It was not conclusive and the jury's actual disbelief thereof cannot be said to be erroneous, especially in the light of the appellant's inconsistent conduct and former convictions of crime which he not only admitted but volunteered. Credibility of the accused and the weight of his testimony is for the jury to appraise, with the right in that tribunal to make their appraisal in the light of their observation of the witness on the stand. State v. Baron and Hickson, 1939, 136 Me. 516, 8 A.2d 161; State v. Norton, 1955, 151 Me. 178, 187, 116 A.2d 635.

We have painstakingly examined the whole record of the evidence, notwithstanding appellant's noncompliance with required appellate procedures, to determine whether in view of all the evidence, the jury was jus-

tified in believing beyond a reasonable doubt that the respondent was guilty of embezzlement as charged, the applicable test on appeal. See, State v. White, 1966, Me., 217 A. 2d 212. We must answer that the jury was fully justified in returning as they did a verdict of guilty.

The points of appeal set up for our consideration as a substantial abridgment of the appellant's rights to an impartial trial certain alleged prejudicial remarks of the Court in the following colloquy between the presiding Justice and the accused.

"By the Court:

Q. Let me ask one question.

A. Yes, sir.

Q. When this all happened up there, according to your story, this guy Catlin tried to get away? Did you try to call him? Did you look for him at all?

A. I was too scared to do anything but go. A prisoner will do that.

Q. I don't know, you know. But as I understand it now, you just locked up the station and left?

A. I locked up the station and left. The station is situated in a situation that you can go into one door, and go around and go into the other room. One glance will tell you if anybody was there or not.

Q. But you didn't attempt to look for Catlin at all?

A. No, sir.

Q. You didn't call the apartment?

A. I figured, seeing he was a friend, he must have had good reason.

Q. Say that again?

A. Seeing that he was a friend of mine, if he did not, he had good reason. At least he thought he had good reason, let's put it that way. That was the stipulation I was going by.

Q. Will you explain that to me, if he was a friend, why would he steal from the station, and leave you in the bag?

A. He is going through an emotional problem of an upcoming marriage, and he was facing a problem there.

Q. He was going to get married, and he has an emotional problem?

A. With the marriage."

Immediately following this colloquy, appellant's attorney closed that phase of the evidence with this pertinent question to the accused:

"Q. Are you trying to tell us that Mr. Catlin's girl friend is pregnant?", to which Rowe answered:

"A. Yes, sir."

■ Counsel has argued that the above colloquy clearly indicated to the jury the presiding Justice's disbelief of the appellant as a witness and his own conviction that appellant was guilty. We do not perceive any such deleterious effect resulting from the Court's dialogue with the appellant, but rather view the situation as beneficial to Rowe's suggested defense that the guilty party was his friend, whose presence in court is conceded. Such evidence of the latter's impending and coerced marriage remains uncontradicted and could properly be considered as sufficient motive for the crime. Such must have been the thinking of appellant's counsel who never objected to the Court's conduct but rather seized upon the occasion to present to the jury such undisputed and supportive evidence to confirm his asserted defense.

By statute, 14 M.R.S.A. § 1105, the presiding Justice "shall not, during the trial, including the charge, express an opinion upon issues of fact arising in the case, and such an expression of opinion is sufficient cause for a new trial if either party aggrieved thereby and interested desires it, and the same shall be ordered accordingly by the law court on appeal in a civil or crim-

inal case." As mentioned above we do not discern any possible aggrievement to the accused by reason of the stated conversation, but even if the occasion lent itself to some possible inference unfavorable to the testimony of Rowe, since the Court's inquiry related to a matter of common experience, to wit, that "if he was a friend, why would he steal from the station, and leave you in the bag?", a matter which undoubtedly was in the forefront of each juror's mind at the time, it is most probable that the jury, mindful of their own inherent desire to have an answer to such logical and expected question, would not interpret the situation as an expression of judicial opinion respecting Rowe's credibility.

■ When counsel regards the examination of a witness including the accused by the presiding judge as being conducted in a manner prejudicial to the accused, indicative of judicial partiality or expressive of an opinion on facts, he should at the first opportunity request the court to dispel the prejudicial effect of the alleged offensive conduct, and ask for instructions to the jury cautioning them not to infer from the judge's interrogation of the witness any inference whatsoever that the court is favorable or unfavorable to the position of either party or has any opinion on any facts. Suggestions to the court of counsel's apprehension of prejudicial effect of certain judicial language or conduct when made timely would doubtless be followed by cautionary instructions to the jury which would remove all grounds for misapprehension. Failure to make his complaint known to the court at that time must be considered as trial strategy and a waiver by the accused of any objection respecting such judicial action. State v. Richards, 1893, 85 Me. 252, 27 A. 122; State v. Hudon, 1947, 142 Me. 337, 52 A.2d 520.

■ Where no objection is made at the time to judicial language or conduct thought to be prejudicial to the rights of the accused so that corrective measures may be adopted to remedy the situation or protect the defendant against unfavorable inferences, this Court will not consider the alleged error on appeal and grant a new trial except in circumstances where the error at trial was so highly prejudicial and calculated to result in injustice that an unjust verdict would inevitably result or when it is apparent from a review of all the record that the accused has not had the impartial trial to which under the law he is entitled. Attorneys for respondents, even though court appointed, have the duty of protecting and preserving their clients' rights in every legitimate way. They must do so as the case progresses subject to the application of the waiver rule if they do not. However, this Court in a criminal case will not refuse to review the record to determine whether the fundamental rights to a fair trial have been accorded the accused. State v. Hudon, supra; State v. Smith, 1944, 140 Me. 255, 37 A.2d 246; State v. Vashon, et al., 1938, 135 Me. 309. 196 A. 88.

In the instant case, we are convinced that the Court's examination of the accused was in no way prejudicial to him and our study of the entire record fully satisfies us that the jury was warranted in believing beyond a reasonable doubt that the appellant was guilty as charged, and that no injustice has been done to him.

Other objections were raised and preserved respecting requests to charge which we have fully examined, but we find no error in the rulings below.

The entry will be

Appeal denied.